FRANK LOFTON *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Purpose to kill. Malice aforethought. Self-defense. Instruction.*

　　A "purpose to kill" is not the equivalent of the "malice aforethought" necessary to constitute murder, and an instruction in a murder case informing the jury that "the deliberation necessary to constitute murder need only exist for an instant before the killing, it being sufficient if the 'purpose to kill' is distinctly formed in the mind," is erroneous, but not necessarily reversible error.

2. SAME. *Estoppel to plead self-defense.*

　　An instruction declaring a defendant estopped to plead self-defense should never be given unless it embraces all the elements essential to the estoppel; and it is unwise for the state to ask such an instruction, since, without the instruction, juries can be trusted to find any defendant guilty whose case is so bad as to estop him to plead self-defense.

FROM the circuit court of Yazoo county.

HON. ROBERT POWELL, Judge.

Appellant was indicted at the August, 1901, term of the circuit court of Yazoo county on a charge of the murder of one Peter Stiff, was tried at the September term of said court, and convicted. From the evidence adduced by the state it appears

that the defendant and deceased had had some angry words a short time before the killing, at or near a "deadening," about one mile from the place of the homicide; that the defendant left the place of the first difficulty, saying he would see deceased again; that the defendant was next seen in the road, coming from his home, with a gun in his hands; that he hailed deceased, who jumped out of his wagon on the side toward defendant, and that defendant shot deceased, killing him instantly; that deceased had no weapon or stick at the time, and was not making any demonstrations against defendant. On the part of defendant, evidence was introduced to show that, at the "deadening," where the first difficulty occurred, the deceased had threatened to "get" the defendant; that, at the time of the shooting, deceased was advancing on defendant with a large stick in his hands, with the same drawn on defendant; that defendant warned deceased not to advance on him, but that deceased paid no attention to the warning; that the stick was found in deceased's hands after he fell to the ground. The defendant, in his testimony, accounts for his presence at the place of the homicide, and of his having the gun, by the fact that he was going over to a Mr. Stubblefield's (his employer) to get some money that had been promised him, and, it being about dark, he carried his gun along; that he was not expecting to meet deceased, and did not know who was in the wagon when he met it. On the trial of the case in the court below the following instructions were asked by the state, and granted by the court:

"No. 2. Every willful killing of a human being which is not excusable or justifiable by law is either murder or manslaughter—murder if it be done deliberately, manslaughter if done without any deliberation whatever; and the deliberation necessary to constitute murder need only to exist for an instant before the killing. It is sufficient, if the purpose to kill is distinctly formed in the mind, though it be but an instant before the fatal shot is fired.

"No. 3. The court instructs the jury, for the state, that, if they believe, from the evidence, beyond a reasonable doubt, that the defendant accosted deceased in the road at the "deadening," and that the defendant and deceased had a difficulty or quarreled there, and that deceased cursed defendant, and that the defendant rode off and said he would see deceased later, or words to that effct, and that the defendant then went to his home and armed himself with his shotgun, intending to use the same to overcome deceased, and kill him, if necessary, in the course of the difficulty, and returned to where deceased was, in the road, and renewed the difficulty, then the defendant cannot plead self-defense; and it is the duty of the jury, if they so believe beyond a reasonable doubt, to convict defendant, even though they may believe that the deceased was advancing on the defendant with a stick at the time he was shot."

Defendant was convicted, and sentenced by the court to be hanged. From this judgment of the court he appealed to the supreme court, and set out, among other grounds of error, the granting of the above instructions.

*Barnett & Perrin,* for appellant.

The second instruction is erroneous in that it pares away the rights of the defendant and makes too narrow the definition of murder. The instruction says that a killing is murder if done deliberately, and the deliberation necessary to constitute murder need only to exist an instant before the killing. Nor does it stop here, but goes on to say further: "It is sufficient if the purpose to kill is distinctly formed in the mind, though it be but an instant before the fatal shot is fired." Now, manifestly the purpose to kill may be distinctly formed in the mind an instant before the fatal shot is fired, and the defendant be not guilty of murder. Is purpose synonymous with the deliberation necessary to constitute murder? Let us apply the instruction to the facts of this case as testified to by the defendant, and the court will clearly see how damaging the instruction must

have been. The defendant's version of the killing was as follows: "All got back in the wagon but Peter, and Peter came on and advanced on me with this stick in his hand. I ran back, and told him to go back or I would shoot him, and he got close and raised his stick, and I fired." Now, surely, if the jury believed this, the defendant ought not to have been convicted. Yet, under the instruction we are criticising—here was the purpose to kill an instant before the fatal shot was fired, and the jury could have believed every word the defendant testified to, and yet, under the instruction, would have been compelled to find him guilty. There is no qualification whatever to the instruction. To make it proper in any state of case, it should have been qualified as was the instruction in *Hawthorne* v. *State,* 58 Miss., 778, by the addition of the words: "Unless the jury believe that the killing was manslaughter or done in necessary self-defense." We submit that it is impossible to conceive of any killing done in necessary defense, or in the sudden heat of passion, where the purpose to kill is not formed in the mind an instant before the fatal shot is fired, and yet this instruction makes no allowance for either of these contingencies, but in effect states positively that it is sufficient to constitute the crime of murder under any circumstances, at any place, in any condition, if the purpose to kill is distinctly formed in the mind, though it be but an instant before the fatal shot is fired. It eliminates at one fell swoop the whole domain of voluntary manslaughter from the law of homicide. An instruction of similar import was strongly condemned in a recent case, that of *McDonald* v. *State,* 78 Miss., 369. Says Whitfield, C. J.: "This instruction pares away the rights of the defendant, and requires the jury to convict of murder, no matter what the provocation." The result in this instance is an attempt to charge the defendant to the gallows "by paring away by instructions, strained to the last point of legal tension, the rights of the defendant." We think the error in this instruction is more forcibly illustrated when

taken in connection with the third instruction given in behalf of the state, and to a discussion of this third instruction we now ask the attention of the court.

We know not how to characterize it other than as vicious. We are aware of the fact that under certain circumstances a defendant may be estopped from pleading self-defense, but as long as it is recognized that self-preservation is the first law of nature, as long as even the worm of the dust will turn to sting the foot that crushes it, so long will it be, before courts can legally instruct juries, that defendants cannot plead self-defense, unless in such instructions the law is accurately followed. We suppose that the idea in the mind of the court in granting the instruction, and also in that of the attorney who drew it, was that if defendant armed himself with a gun, intending to use it in overcoming the deceased, and to kill him if necessary to do so, and that in pursuance of this intention he renewed the difficulty with the deceased for the purpose of provoking the deceased to make some overt act for which defendant could kill him, and that this was done, that under such circumstances defendant could not plead self-defense; but we submit that the instruction falls far short of the above requisite. The circumstances under which a defendant is not allowed to plead self-defense is most succinctly stated by Judge Whitfield in *Patterson* v. *State,* 75 Miss., 670, as follows: "If he had threatened Brinson's life, and determined to kill him, and, seeing him, went out with his loaded gun for the sole purpose of bringing on a difficulty, in order to get an opportunity to kill him, taking his gun for that purpose, and intending to use it if necessary to kill Brinson, of course he would be guilty of murder."

The idea expressed in the instruction is, that one is estopped from pleading self-defense, regardless of what may happen, if at any time before the difficulty he arms himself with a shotgun, intending at the time of so arming himself to use it to overcome his adversary and kill him if need be. It will be

observed that the instruction nowhere states, in order to constitute murder, that it was necessary that this intention on the part of the defendant should be carried out. The intention in the instruction relates only to the time of procuring the gun at the home of the defendant, about half a mile from the scene of the killing, and estops the defendant from pleading self-defense, even though at the time of the difficulty he had abandoned that intention, or abandoned it at any time during the difficulty. If this is the law, then it must follow that if one at the time he arms himself intends to use the weapon to overcome his adversary, and to kill him if necessary to do so, and thereafter repents or changes his mind, still if the difficulty is renewed under any circumstances, and he kills his adversary, regardless of whether it was done in self-defense or not, nevertheless he is guilty of murder. This is a doctrine which shocks human credulity. "It is not true that the right of self-defense can never arise at any stage in the difficulty, when one is defending himself against danger of any kind, that he may have unlawfully provoked." *Patterson v. State,* 75 Miss., 670.

In *Prine* v. *State,* 73 Miss., 838, the following are laid down as essentials to deprive one of the plea of self-defense: (1) He (the slayer) must have been the originator of the difficulty; (2) he must have entered it armed; (3) he must have brought it on and entered into it intending to use his weapon, and overcome his adversary if necessary in the encounter." The vice in the instruction, when measured by these rules, is manifest. It was not sufficient that the defendant armed himself at his house, intending then to use the weapon to overcome his adversary, or to kill him if necessary; nor was it sufficient that he "renewed" the difficulty, whatever that may mean; but the instruction should have gone further and contained the last element of the principle as laid down in the Prine case; namely, that he must have so brought on the difficulty, and entered into it, intending to use his gun and overcome his adversary if necessary in the course of the encounter. This essential element

is left out of the instruction altogether. It is not the intention at the time that the gun was procured that controls, but it is the intention at the time the difficulty is brought on. As is said in the Prine case, *supra.* "The jury might believe that Prine was the aggressor, and brought on the difficulty, and that he entered it armed with a pistol, yet Prine was not cut off from the right of self-defense unless the jury should further believe from the evidence that Prine so brought on the difficulty, armed with a deadly weapon, and intending to use it when he provoked or brought on the encounter."

In *Fore* v. *State,* 75 Miss., 727, an instruction (No. 5), which took away from the defendant the right of self-defense, and which we think came much nearer embracing all the required elements, was held erroneous because it did not conform to the principles laid down in *Prine* v. *State.* In fact, so far as we have been able to discover, it is universally held that in order to deprive the defendant of the right of self-defense by an instruction, the instruction must embrace all the elements necessary to the estoppel, and no instruction on this line has been approved which lacked any of the essentials.

This instruction is open to another and we believe fatal objection. The jury are told by it that if they believed the defendant renewed the difficulty and killed the deceased with the gun, "then the defendant cannot plead self-defense, and it is the duty of the jury, if they so believe beyond a reasonable doubt, to convict the defendant, even though they may believe that the deceased was advancing on the defendant with a stick at the time he was shot." The defendant testified that the deceased advanced on him with a stick, and the purpose of this instruction was to destory the effect of this testimony with the jury. But the defendant also testified that when the deceased was advancing on him with a stick, he besought the deceased to stop, and retreated as deceased advanced on him, and did not shoot until the deceased came within striking distance of him. Conceding that the defendant renewed the difficulty, here

was testimony that he abandoned it. Now, it being sought to convict the defendant, notwithstanding his testimony might be believed by the jury, fairness and justice required that any instruction based on the defendant's testimony should embody it all. "If a hypothetical case is to be submitted to the jury, all the material facts should be fairly stated." *Prine* v. *State,* 73 Miss., 838, 843.

The reason for the rule is evident. Where it is sought by an instruction, in a case being tried, to present hypothetically to the jury a particular phase of it, the instruction asked should in some form cover all the testimony relating thereto, so that the jury can act intelligently. Especially is this true where the testimony of a defendant in a murder case is by the instruction adverted to. An omission to present to the jury all that the defendant had testified to as to the particular phase considered, under such circumstances is as much a charge on the weight of evidence as if the court had expressly charged the jury to disbelieve that part of the testimony of the defendant not covered or considered by the instruction. The omission to consider it must mean to a jury one of two things, either that the defendant has testified falsely in respect thereto, cr, if he has testified truthfully, that the jury must notwithstanding find the defendant guilty. Considering now this instruction, if the court meant that the defendant had testified falsely, this is a charge on the weight of evidence; if, on the other hand, the court meant that the defendant in retreating and in beseeching the defendant not to advance on him, and in not shooting until the deceased came within striking distance of him, did not constitute an abandonment of the difficulty; this, to say the least, is also an infringement on the province of the jury. The jury should have been left free to pass not only on the truthfulness of the testimony of the defendant, but also, if they believed his testimony true, to decide whether or not the defendant, before he shot, had abandoned the difficulty. The right of self-defense is not lost if a defendant abandons a

difficulty, no matter if he in the first instance provoked it, armed, with the intention then existing of using his weapon, if it became necessary to overcome his adversary. When he abandons the difficulty, malice no longer exists, and the right of self-defense is restored if ever lost. *Smith* v. *State,* 75 Miss., 542, 553; *Patterson* v. *State,* 75 Miss., 675.

We submit, then, that this instruction is erroneous in that it failed to contain the necessary qualifications, "unless the jury believed beyond a reasonable doubt the defendant had not in good faith abandoned the difficulty at the time the fatal shot was fired." *Smith* v. *State, supra.* If this instruction is erroneous, for the reasons above stated, it could not be cured by the instructions granted the defendant, for to say in some instructions the defendant had the right to act in self-defense, and then by another or others to wrongly define this right, is equivalent to the denial of the right of self-defense. If, however, this were not so, yet the instructions are made conflicting and misleading.

*Monroe McClurg,* attorney-general, and *Henry & Barbour,* for appellee.

We cannot conceive how a defendant, who has had an altercation and angrily rides from his antagonist, and says that he will get him later; who goes home and arms himself with a shot-gun, and starts from his home on the very road that he left his antagonist traveling, and suddenly appears before him, at the point in the road at which his antagonist would leave it (and all this within fifteen minutes after he has threatened to kill him), and again renews the difficulty, can contend that the third instruction in this case is erroneous, in that it does not negative the idea that defendant may have abandoned the purpose to kill, that it was in his mind at the time that he procured the gun, not more than fifteen minutes previous to its murderous use.

If there was any evidence, or circumstances, or want of evidence, showing, or tending to show, any desire or inclination on the part of the defendant to abandon his purpose, or any change in his mind, there might be something in the contention. But where only a few minutes elapse between the arming and killing, such is not the case. *Cannon* v. *State,* 57 Miss., 153.

The safety of society requires that he, who is bent on mischief and revenge, shall not escape the just consequence of his unlawful acts merely because of some provocation by his victim, while he is in pursuit of his murderous purpose. *Hunt* v. *State,* 72 Miss., 416; *Helm* v. *State,* 67 Miss., 574.

It is true that in the case of *Prine* v. *State,* 73 Miss., 838, the court says: "He, Prine, must have been the originator of the difficulty. He must have entered it armed, and he must have brought it on and entered into it, intending to use his pistol, and to overcome his adversary in the course of the encounter." The same principle is announced in *Fore* v. *State,* in 75 Miss. In each of these cases, however, there is no question of the defendant having purposely armed himself, or provided himself with a weapon with the intent to use it, etc. In each case the defendant, being already armed, the court says he must have entered the difficulty with the intent, etc. This brings us to the proposition: Is it necessary, in order to cut a defendant off from pleading self-defense, that he must arm himself for the purpose of overcoming and killing, if necessary, his antagonist, and having so armed himself renewed the difficulty and entered it with the original intent to kill his antagonist in the difficulty? Or is he precluded from pleading self-defense if being armed (not having armed himself for the purpose and with the intent), he provokes a difficulty intending when he enters it to overcome, and if necessary kill his antagonist in the course of the encounter? We think the cases of *Prine* v. *State* and *Fore* v. *State* establish the latter proposition. In each of these cases both defendants, when the difficulty arose,

were armed, and there is no proof that they armed themselves originally with the intent or for the purpose of entering the difficulty, and in its course overcome or kill, etc., if necessary. *Allen* v. *State,* 66 Miss., 385; *Long* v. *State,* 52 Miss., 38. But even admitting, for the sake of argument, that the third instruction given for the state is, in stating the general principle of the law, incorrect, can it be said from the testimony, and the very liberal instructions given for the defense, that there is any probability or likelihood that the jury were misled, or the defendant done an injustice? With the instruction given, with the modification contended for by counsel, it is not at all likely that a different verdict would have been rendered. If not, the case should be affirmed. This rule has been announced repeatedly by this court.

Argued orally by *J. S. Perrin,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The second instruction for the state is erroneous in its closing paragraph. "Purpose to kill," merely, is not the equivalent of the malice aforethought necessary to constitute murder. Every one who takes life in self-defense has the "purpose to kill." We would not, however, reverse for this error alone, since it is not probable the jury were misled by this inaccuracy of expression.

But the third instruction for the state is fatally erroneous, in attempting to inform the jury when the defendant would be estopped to plead self-defense, without including all the elements of fact essential to the estoppel. There is irreconcilable conflict between not only the defendant's testimony and the state's, but (as to the stick) between the other witnesses for defendant and those for the state. If the defendant and his witnesses are to be believed, then the killing was in self-defense; and the defendant had a right to have instructions presenting his theory of the case, and ought not to have been deprived of

that right by a charge, based on part only, of the testimony, declaring him to be estopped from pleading self-defense. There is no evidence at all in this record as to what his purpose was in procuring the gun, except his own, and that shows a lawful purpose. There is none that he procured it with the intention of using it in a difficulty which he intended to provoke, if necessary to overcome his adversary in that difficulty, and that that purpose and intention he retained up to and through the combat. And yet the charge is framed as if there were facts proven on which the jury might so find, and hence hold him estopped to plead self-defense. This form of charge, declaring a defendant estopped to plead self-defense, is an exceedingly unwise one to be given. We have repeatedly condemned it, as shown by cases cited in the very able brief of counsel for appellant. It can never be proper, save in the few very rare cases where the case is such, on its facts, that a charge can be given embracing all the elements—not part of them, nor nearly all of them—essential to the estoppel. The old paths are the safe paths. The juries of the country can be safely trusted to find any defendant guilty whose case is really so bad as to estop him to plead self-defense, without resort—dangerous and unwise—to the metaphysical subtleties necessarily involved in the preparation of a proper charge of that sort. Once more we repeat (hoping that "here a little and there a little, line upon line, and precept upon precept" may at last do their work) that if prosecuting attorneys will ask few and very simple charges, and trust more to the common sense and sound judgment of the juries of the country, they will expose their circuit judges to far less risk of reversal, secure just as many convictions, and have far—very far—fewer cases reversed.

*Reversed and remanded.*