## AUSTIN PULPUS *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Homicide. Evidence.*

   In the absence of evidence of a conspiracy, the statement of a third party, not made in the presence of the accused, to the effect that "they" were not going to prosecute the deceased for assaulting the defendant, but "were going to get him," is not admissible on the trial of the defendant for afterwards killing deceased.

2. SAME. *Co-defendant's escape.*

   On the trial of a defendant for homicide it is error to permit the state to prove that a co-defendant, not on trial, had left the state and forfeited his bail bond.

3. SAME. *Self-defense. Surrender of right.*

   The right of self-defense is not surrendered, although defendant armed himself with a deadly weapon and sought his adversary with intent to kill him and was the aggressor in the altercation in which he killed him, if after the beginning of the altercation defendant abandoned the intent and the killing was not in pursuance of it.

FROM the circuit court of, first district, Chickasaw county.

HON. EUGENE O. SYKES, Judge.

Pulpus, appellant, was indicted, tried and convicted of murder, and appealed to the supreme court. The opinion of the court states the facts of the case.

*T. J. Buchanan,* for appellant.

This case was the killing of a human being by another un-
aided or abetted by any one, but the state attempted to prove a
conspiracy on the part of all the defendants and others to kill
and murder the deceased. The evidence completely fails in
this; there was not a word or act of the defendant that was not
satisfactorily explained and shown to be inconsistent with the
theory of the state.

While there has been some difficulty among the different
authors and text writers on criminal law as to a definition of
conspiracy broad enough to cover all cases, still, where the
object is criminal, there is no conflict whatever.

It is manifest that the court erred in admitting the statement
of Isaiah Gillespie in the case against the defendant; there
having been no foundation laid by proof establishing or tending
to establish the existence of a conspiracy or combination by him
and the party on trial to commit the offense charged. Green-
leaf lays it down, in terms, that the acts and declarations of
conspirators and accomplices to be admissible in evidence must
be confined to acts and declarations made or done "during the
pendency of the criminal enterprise, and in furtherance of its
object." 1 Greenl. on Ev., sec. 127; 3 *Ib.,* 280, 233; *Brown-
ing* v. *State,* 30 Miss., 656; *Ganad* v. *State,* 50 Miss., 147.
The court erred in admitting Wiley Gladney to testify to what
Theo Wilson said the day before the killing, to the effect that
he, Wilson, called him aside and asked him if defendant was
not going to report the deceased for splitting his head open with
the spade, when Wilson replied that "they would get him."
This statement was made in the absence of defendant, and there
was no evidence attempting to connect Wilson with the killing
and no attempt to connect him with any conspiracy to kill the
deceased.

*Gilleylen & Leftwich,* on same side.

Declarations of one of the conspirators are never admissible

against the others unless the conspiracy has been established by other evidence. *Spies* v. *People,* 3 Am. St. Rep., 689; *Wiggins* v. *Leonard,* 9 Iowa, 194; *Ford* v. *State,* 112 Ind., 373; *State* v. *Weaver,* 57 Iowa, 730.

Declarations made by one before the conspiracy begins are no more admissible than those made after it is passed. Mere historical statements of one are not admissible against others of the conspirators. *Cox* v. *State,* 8 Tex. App., 254; *Everage* v. *State,* 21 So. Rep., 404, 113 Ala., 102; *Brunson* v. *State,* 27 So. Rep., 410, 124 Ala., 87; *Cryer* v. *State,* 71 Miss., 467.

One person cannot be connected with a conspiracy by the declaration alone of a third person. *Ford* v. *State,* 112 Ind., 373, 383.

The admission of Wilson's declaration, if he were on trial, would be another question. But such evidence is confusing to the jury and damaging to the defendant. There is no evidence at all as to whom Wilson had in mind when he said "they were going to get him." Anderson was being talked about, which might identify "him," but who "they" were who were going to get "him" is nowhere disclosed. The statement is entirely too indefinite to bind defendant. *Res inter alios acta alteri non debet.*

To show a conspiracy there must be proof that more than one person is guilty of complicity in the killing. Mere presence is not enough. *Hairston* v. *State,* 54 Miss., 689; *Spies* v. *People,* 3 Am. St. Rep., 689.

This declaration of Wilson was admissible, if at all, owing to its indefiniteness against him only. *Brunson* v. *State,* 27 So. Rep., 410; *McAlpin* v. *State,* 23 So. Rep., 130.

The giving of charge No. 2 is manifestly error. This charge is condemned three times in one volume of reports of this court. *Smith* v. *State,* 75 Miss., 542; *Patterson* v. *State,* 75 Miss., 670; *Fore* v. *State,* 75 Miss., 727.

It is again condemned in *Lofton* v. *State,* 79 Miss., 734. It

is rightfully in disrepute. It outlaws a defendant charged with crime in the courts of his country. It estops him from setting up the constitutional right of self-defense. It betrays a manifest effort of district attorneys overzealous to charge defendants into the penitentiary and onto the gallows. There may be cases in which this charge is proper, but they are exceedingly rare, and so delicate are the rights invaded by it that it must be exact in the statement of facts and to stand the evidence must support every word of it. Specifically this charge in this case is open to several fatal objections.

First. There is no evidence in the record that Austin Pulpus was hunting George Anderson to kill him.

Second. This charge, by the language, "armed with deadly weapon provided for the purpose," assumes as proven and as a fact what is not proven at all, we say, certainly it is a fact hotly controverted in the evidence.

This was error. *Myrick* v. *Wells,* 52 Miss., 149; *Hogan* v. *State,* 46 Miss., 274; *Ledbetter* v. *State,* 61 Miss., 22; *Brown* v. *State,* 72 Miss., 997; *Smith* v. *State,* 75 Miss., 542; *Coleman* v. *Adair,* 75 Miss., 660; *Fore* v. *State,* 75 Miss., 727.

Third. The charge assumes it to be proven that "when he (Pulpus) found Anderson he provoked a difficulty with Anderson, or was the aggressor in a difficulty in which he killed Anderson." This is also a groundless assumption.

Fourth. The charge is fatally erroneous in assuming that the killing under the facts stated would have been murder in any event. Such is not the case. The purpose to kill must be retained up to and through the difficulty. *Long* v. *State,* 52 Miss., 23; *Lofton* v. *State,* 79 Miss., 734; *Cannon* v. *State,* 57 Miss., 154.

The court allowed the district attorney to prove that Arthur Orr, indicted in the same true bill with defendant on trial, was under bond and was out of the state and had defaulted at the time of trial. This was manifestly error. Pulpus could not

be responsible for the conduct of his codefendants.    Pulpus not only went to Okolona and surrendered himself to the sheriff; he was released under bond and was present for trial.    Even on the conspiracy theory one defendant, or conspirator, cannot be held responsible for the conduct of another after the supposed conspiracy ·is ended.    *Spies* v. *People,* 3 Am. St. Rep., · 487, and cases there cited.

*William Williams,* attorney general, for appellee.

[The reporter has been unable to find the brief of the attorney general.]

CALHOON, J., delivered the opinion of the court.

The defendant and Alex Pulpus and Arthur Orr were jointly indicted for the murder of George Anderson.    At the next term, Isaiah Gillespie was separately indicted for this same offense.    We have only to do with the case of Austin Pulpus, who was separately tried.    This defendant and George Anderson, on the day preceding the homicide, were engaged as laborers in ditching, when some difficulty occurred between them, and Anderson struck him on the head with a spade, inflicting a bad scalp wound.    After the blow Anderson threatened to kill Austin Pulpus.    Only these two were engaged in this trouble.    Austin Pulpus went to a doctor and had his head shaved and wound sewed up, and there is no evidence to show a conspiracy between Austin Pulpus, Alexander Pulpus, Arthur Orr, Isaiah Gillespie, Jesse Wilson, and Fee Wilson to perpetrate the homicide, but the evidence of conspiracy, if there be any such, is exceedingly unsatisfactory.    On the night of the day when the blow with the spade was inflicted on the defendant, he. armed himself with his father's pistol, as he says, for the purpose of being in condition to defend himself if Anderson undertook to carry out his threat.

All of the persons mentioned, including defendant, were at Joseph Randle's house on the next morning, which was the day

on which the homicide was committed. The most of them had
rabbit sticks, and say they hunted rabbits as they came through
the fields. George Anderson was at work there, and the defense
showed by testimony that they saw him and spoke to him. All
these parties ditched for Joseph Randle on the afternoon when
the first difficulty occurred, and it is said, on the part of the de-
fense, that they wanted Joseph Randle to go down to the ditch
to see about measuring up the work, and so Randle and Isaiah
Gillespie went .on the road, and the others through the fields.
The measuring was done at the ditch, and Randle was the first
to leave the ditch, going home. Soon after, Austin Pulpus, on
account of his head paining him, started home, and with him
went Alexander Pulpus, Arthur .Orr, and Fee Wilson. All
started home by the road which went by Randle's house, but
Wilson stopped, before the point where the road passed Randle's
house, at another house to get a drink of water. Orr and Alex-
ander Pulpus, going in advance of Austin, had passed George
Anderson when Austin came up.

A witness was permitted to state, over objection, that, in
answer to his question to Fee Wilson whether they were going
to report Anderson for the blow with the spade, he said, "No,"
they were "going to get him." This was in the absence of
defendant or any of the party, and this was error.

There was nothing to show that the presence of the party was
other than accidental. On the appearance at Joseph Randle's
house, when the killing occurred, the state offered evidence,
somewhat conflicting, to the effect that Austin went up to An-
.derson and asked him if he was done with the row, to which
Anderson answered, "Yes," and that Austin then threw a club
stick at him twice, and that then Anderson threw a frow at
Austin, when Austin shot him twice, first in the knee, and then
in the back. Another witness for the state testifies that Austin
first threw a stick, and next a brick, at Anderson, and then
Anderson threw a frow at him, and that both parties were
standing up when the shooting was done.

The testimony for the defense is to the effect that Austin, as he passed Anderson, who was working at a crib with the frow, was hailed by Anderson, who said he wanted to settle that little "rucus," when Austin said he thought it was settled, to which Anderson replied, "I meant to kill you, and, God damn you, I am going to kill you," when defendant turned to go away, and Anderson threw the frow, striking him in the back and knocking him down, and that, while he was down, Anderson advanced on him with an axe raised to strike, and Austin, while down, and while Anderson was so advancing, shot him twice. There seems no doubt that Austin was struck in the back with the frow, and there is no doubt either that both the pistol balls ranged upwards, one striking just above the kneecap and going up into the groin, and the other striking at the base of the spinal vertebræ and going up inside of the body.

There is conflict in the evidence as to the location of the axe and frow and the hats of the men immediately after the killing. It is perfectly plain that the wounds from the pistol could not have been inflicted by the man who used the pistol if he had been standing up.

Under this presentation of facts, the court gave the following instruction at the instance of the state: "The court instructs the jury that, if they believe from the evidence in this case, beyond a reasonable doubt, that Austin Pulpus was hunting George Anderson to kill him, armed with a deadly weapon provided for that purpose, and that, when he found Anderson, he provoked a difficulty with Anderson, or was the aggressor in the difficulty in which he killed Anderson, then he is guilty of murder, even though he killed Anderson in self-defense, and the jury should so find." We think, on the evidence in this record, the granting of this instruction was fatal error. *Lofton v. State,* 79 Miss., 723, 31 South., 420, and the other citations in the briefs for appellant. It must be quite an overwhelming case for the state on the facts to keep this instruction from being

reversible error.    It wholly excludes any consideration of the doctrine of *locus penitentiae,* even where, as here, there is evidence of an abandonment of the conflict.    It is not strictly correct as written.    One may provide himself with a deadly weapon and hunt another, with design to kill him with it, and provoke and be the aggressor in the encounter in which he kills the other, and still, in the progress of the difficulty should not be denied the right of self-defense, if the killing be not pursuant to the original purpose to kill.    If he abandons the conflict, and is fleeing from it in good faith, and not for vantage, he may defend himself from threatened death or great bodily harm.    *Lofton* v. *State,* 79 Miss., 734, 31 South., 420.

We think it was error to permit the state to show that Arthur Orr, who was jointly indicted with appellant, and was under bond for appearance, was out of the state, and not present pursuant to his bond.    *People* v. *Stanley,* 47 Cal., 114, 17 Am. Rep., 401, and the other citations of counsel's brief.

*Reversed and remanded.*