## ADAMS *v*. STATE.*

### (Division B. Oct. 13, 1924.)

[101 So. 437. No. 24096.]

HOMICIDE. *Instruction denying accused provoking difficulty right of self-defense held erroneous, in view of evidence of abandonment of homicidal intent.*

In a murder case it is error to give an instruction for the state, denying defendant the right of self-defense if he armed himself with a deadly weapon and provoked the difficulty with intent to kill the deceased, where there is testimony tending to show that defendant abandoned the intent to kill before slaying the deceased, and that the killing was in self-defense.

*Headnote 1. Homicide, 30 C. J., section 632.

APPEAL from circuit court of Jefferson Davis county.
HON. J. Q. LANGSTON, Judge.

Garfield Adams was convicted of manslaughter, and he appeals. Reversed and remanded.

*Livingston & Milloy* for appellant.

We believe that the evidence shows clearly and beyond every reasonable doubt that appellant was about to be killed by the deceased at a time when he, appellant, was going from the deceased, yet the court, under the theory of the state, denied appellant the right of self-defense. We are clearly of the opinion that under the facts of this case, appellant was undoubtedly entitled to the instruction sought. The state by its own evidence had positively shown that appellant had abandoned the first difficulty and that he made the stroke with the knife in his necessary self-defense, and not pursuant to any original intention to kill the deceased.

The court will observe that the state in these instructions merely assumed that appellant armed himself for

the purpose of bringing on a difficulty with the deceased, and this assumption was right in the teeth of the evidence for the state.

The jury should have been told in the instruction that if appellant abandoned the difficulty that the right of self-defense was not lost, no matter if he in the first instance provoked it, armed, with the intention then existing of using his knife, if it became necessary to overcome the deceased, and that the killing would have had to be done pursuant to an original intention to kill.

The two instructions given have been many, many times condemned by this court. *Herring* v. *State,* 87 Miss. 628, 40 So. 230; *Lofton* v. *State,* 79 Miss. 723, 31 So. 420; *Cooper* v. *State,* 80 Miss. 175, 31 So. 579; *Jones* v. *State,* 84 Miss. 194, 36 So. 243; *Pulpus* v. *State,* 82 Miss. 548, 34 So. 2; *Prine* v. *State,* 73 Miss. 838, 843; *Smith* v. *State,* 75 Miss. 542, 553; *Patterson* v. *State,* 75 Miss. 675; *Fore* v. *State,* 75 Miss. 732; *Garner* v. *State,* 93 Miss. 843, 47 So. 500; *Lucas* v. *State,* 109 Miss. 82, 67 So. 851; *Williamson, et al.* v. *State,* 115 Miss. 716, 76 So. 637.

*F. S. Harmon,* Assistant Attorney-General, for the state.

Counsel for the appellant argues with force and vigor that the first instruction granted for the state is erroneous. It is frankly admitted that similar instructions, as pointed out in the brief of counsel for the appellant, have been several times condemmed by this court, and, if the instructions here quoted, stood alone, the cases cited in support of appellant's contentions would doubtless govern here. However, neither this nor any other single instruction can be legitimately considered by itself. Instructions do not stand alone. They are not supposed to be given as hooks upon which to hang a reversal, but as aids to the twelve men in the jury box as they set

about arriving at a verdict. The entire group of instructions must be taken together and, looking at them all, the court must ask whether the jury were given proper guidance in their deliberations.

"Instructions are to be construed together as of *pari materia,* one as modifying another. If construing them thus the law be correctly expounded the judgment will not be reversed because a single instruction taken by itself is too broad in its terms." *Mask* v. *State,* 36 Miss. 77.

And so it is that before condemning the first instruction here granted to the state, careful consideration must be given to the seventeen elaborate instructions given on behalf of the defendant. It is insisted that the instruction complained of took away from the appellant all of his rights under a plea of self-defense. The short answer to this contention is that instruction number 16 told the jury that: "If you have a reasonable doubt as to whether the defendant acted in self-defense or not, then you must resolve the doubt in his favor and acquit him."

The instruction complained of is a legal abstraction and as such, of course, should be condemned. Even if it goes further and taken alone, incorrectly advises the jury, then it is submitted that this instruction short, concrete, and unmistakable in language, so correctly advised the jury on the question of self-defense that they could not have been misled in the premises. Furthermore, instruction number 11 begins by telling the jury that "if you believe from the evidence that the defendant was justified in stabbing the deceased," then the subsequent step was immaterial, etc. Here the reference to justification takes care of the defendant's rights under the plea of self-defense. While instruction number 7 tells the jury that if there are two theories arising from the evidence, one favorable and the other unfavorable, and there is any reasonable doubt as to which is true, then the jury must adopt the theory favorable to the defendant and acquit him. The only possible theory justifying the fatal

stroke is the theory of self-defense, and here, again, the jury was given a clear-cut and unmistakable guide fully protecting the defendant's rights on this question.

But the complete and all-sufficient answer to the various contentions of appellant's counsel respecting the instructions is found in instruction 13 granted for the defendant which reads as follows: "The court instructs the jury for the defendant in this case that if you believe from the evidence in this case that the defendant had yielded to the entreaties of his friend, Bob Newsom, and was retreating or retiring from the scene of the first altercation without any intention of renewing the altercation, then you must acquit the defendant outright, regardless of every other fact and circumstance in the case, and regardless of whom you may please or displease by your verdict."

This instruction rises before the appellant's counsel as an insurmountable barrier to his success. It is small wonder that the district attorney cried out against this instruction in the trial court. It is small wonder that the district attorney described it as a peremptory instruction for the defendant. The defendant could not possibly have secured a more favorable instruction.

The jury is bound to have found from instruction number 13 that the defendant had not abandoned the first altercation without the intention of renewing it and with this finding of fact which irresistibly follows in the light of the plain language of the instruction, the jury could not have been misled by the instruction complained of. For it is clear that the appellant provoked the difficulty, that he had borrowed this dangerous weapon from another negro and armed himself with it in addition to the small, rusty knife which he carried for ordinary purposes, that he threatened the life of the deceased by saying, as he collared him, that he would cut his damned head off and stating a moment later that he would kill him, while only a few steps distant. Coupling these facts

with what must have been, in the light of instruction 13, the finding of the jury that the appellant did not abandon the altercation without an intention of renewing it, it is submitted that the granting of instruction number 1 for the state does not constitute reversible error.

*Livingston & Milloy,* for appellant, in reply.

This instruction was a radically incorrect statement of the law, was woefully misleading, and prejudicial in the extreme to appellant. It was not and could not be cured by the instructions given on behalf of the appellant. How was it possible for the appellant to clear the minds of the jury on such contradictory instructions as were given by the court on behalf of the state and the appellant? It simply could not be done and was not done in this case.

Argued orally by *G. M. Milloy,* for appellant, and *Francis Harmon,* Special Assistant Attorney-General, for the state.

Cook, J., delivered the opinion of the court.

The appellant, Garfield Adams, was indicted and tried for murder in the circuit court of Jefferson Davis county, and was convicted of manslaughter and sentenced to the penitentiary for fifteen years, and from this conviction and sentence he prosecuted an appeal.

The facts upon which this conviction rests are substantially as follows: The appellant, Garfield Adams, the deceased, Willie Norwood, and two companions, all negro boys between the ages of fifteen and eighteen years, were proceeding along a settlement road on Sunday afternoon. After they had traveled some distance from the starting point the appellant said to Willie Norwood, the deceased, "I heard you were going to kill me." Nor-

wood denied that he made such a statement, whereupon the appellant insisted that he had said it, and deceased again denied the statement. Thereupon the appellant, while holding in one hand an open long-handled knife, caught the deceased in the collar with the other hand and said to him, ''I will cut your damned head off.'' At this point Bob Newsom, one of their companions, went up to the pair, caught the appellant by the arm, and said to him, ''Come on and don't do that; there is nothing about what a fellow said.'' Newsom testified that the appellant then cut at him with the knife, but he succeeded in separating them, and the appellant walked away with Newsom, still holding the open knife in his hand. As he walked away he looked back at the deceased and told him that he would kill him. When the appellant and Bob Newson had walked away about eight steps, Norwood, the deceased, picked up a fence rail several feet long and advanced upon the appellant. Just as Norwood was in the act of striking him with this rail the appellant partially turned toward Norwood, and as he did so Norwood struck him a stunning blow with the rail, which knocked him to his knees and broke the rail. Norwood then raised the piece of rail still in his hand to strike a second blow, and, as he was in the act of striking the second blow, the appellant, still on his knees from the first blow, plunged his knife into Norwood's chest and cut him a second time across the shoulder. Norwood staggered a few feet away and died in a few moments. ·

The first assignment of error urged by the appellant is based upon the action of the court in refusing a peremptory instruction requested by him. There was no error in refusing this instruction. Under the facts in this record the issues involved should have been submitted to the jury under instructions properly submitting the theory of the appellant that the fatal blow was struck in the necessary defense of his person.

The next assignment of error brings into review the first instruction granted for the state, which instruction told the jury that—

"Under the law one who provokes a difficulty with another, and arms, herself with a deadly weapon with the felonious intent to willfully, unlawfully, feloniously, and of his malice aforethought, kill and murder such other human being, and who pursues such intention to the extent of precipitating a difficulty with such other person while thus armed cannot, in such difficulty thus provoked by him, justify his act in taking the life of such other person by a plea that such killing was done in self-defense."

On the facts in this case it was error to grant this instruction. Instructions similar to this one have been repeatedly condemned by this court, and in the case of *Lofton* v. *State,* 79 Miss. 723, 31 So. 420, it was said that this form of charge "can never be proper, save in the few very rare cases where the case is such, on its facts, that a charge can be given embracing all the elements—not part of them, nor nearly all of them—essential to the estoppel" to plead self-defense. There was evidence from which the jury would have been warranted in finding that the appellant had in good faith abandoned the difficulty and was retiring from the scene, and while so doing he was pursued and attacked by the deceased with a dangerous or deadly weapon, and that at the time he struck the fatal blow he was in imminent danger of losing his life or suffering some great bodily harm at the hands of his assailant. This being true, the appellant was not estopped to plead self-defense, and it was error to grant this instruction which, as applied to the facts in this case, omitted this necessary qualification. *Smith* v. *State,* 75 Miss. 553, 23 So. 260; *Patterson* v. *State,* 75 Miss. 675, 23 So. 647; *Lofton* v. *State,* 79 Miss. 723, 31 So. 420; *Cooper* v. *State,* 80 Miss. 175, 31 So. 579;

*Pulpus* v. *State,* 82 Miss. 548, 34 So. 2; *Jones* v. *State,* 84 Miss. 194, 36 So. 243; *Garner* v. *State,* 93 Miss. 843, 47 So. 500; *Williams* v. *State,* 115 Miss. 716, 76 So. 637.

*Reversed and remanded.*