192 So.2d 923 (1966)
Robert A. TATE
v.
STATE of Mississippi.
No. 44160.
Supreme Court of Mississippi.
December 12, 1966.
Charles A. Brewer, Barnett, Montgomery, McClintock & Cunningham, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
Robert A. Tate was tried in the Circuit Court of the First Judicial District of Hinds County upon an indictment charging him with the murder of Clinton Simmons. The jury returned a verdict convicting him of manslaughter, and he was sentenced to serve a six-year term in the penitentiary. From that conviction and sentence he has appealed here.
Both Tate and Simmons were employees of the Pet Milk Company. Tate worked in the shipping office, where he had a desk, and his duties included supervision of outgoing deliveries by the company's trucks on regularly scheduled routes. He was 51 years of age, weighed between 150 and 160 pounds, and was in somewhat impaired physical condition. Simmons was a truck driver, 23 years of age, weighing between 190 and 200 pounds, who delivered milk to schools and did outside work. Both had been employed by the Pet Milk Company for a number of years.
Some time prior to the homicide, a difficulty had arisen between Tate and Simmons *924 as to the arrangement of the latter's delivery schedules, over which Tate had, or Simmons thought he had, some control.
Ordinarily, Tate reported for work at 4:00 a.m. and left at 12:00 noon. Simmons came on at 7:00 a.m., made his deliveries and returned to the plant about 9:00 a.m., where he then did other outside work.
Simmons was shot and killed by Tate, as he started to enter Tate's office. Tate's defense was self-defense. Tate claimed that he shot Simmons at a time when he reasonably apprehended that he was in imminent danger of suffering death or great bodily harm at the hands of Simmons.
Tate testified at some length regarding the long-standing difficulty between him and Simmons over the latter's schedule. He said that on several occasions Simmons had threatened him with violence. On the morning of the homicide, Tate testified that Simmons, before departing on his routes, had threatened to kill him (Tate), if he had not straightened out the route schedule matter by the time he (Simmons) returned. Tate tried to get it done by asking Johnson, another employee who had the authority to make schedule changes, to come down and revise Simmons' schedule. Johnson promised Tate that he would do so; but, as the time neared for Simmons to return and Johnson had not put in an appearance, Tate's apprehension increased that, on his return, Simmons would carry out his threat when he found that nothing had been done about correcting his schedule.
As 9:00 a.m. approached (the hour at which Simmons' return was expected), Tate went out to his car and got his pistol. The only testimony in the record as to his reason for doing so, is Tate's own testimony. This was to the effect that he did so in order to be able to defend himself against the threatened attack by Simmons, at whose hands he apprehended grave bodily harm or death.
The State's case was, in substance, that Tate shot Simmons as the latter started to enter Tate's office, at a time when Simmons was unarmed, and Tate was neither in real nor apparent danger of death, or grave bodily harm at his hands.
The State requested and was granted the following instruction:
"The Court instructs the jury for the State that if you believe from the evidence in this case, beyond a reasonable doubt, that the Defendant, Robert Tate, at a time when he was not in any immediate danger, real or apparent, of losing his life or suffering some great bodily harm at the hands of Clinton Simmons, armed himself with a deadly weapon with the intention of provoking a difficulty with and overcoming Clinton Simmons, the deceased, and that Robert Tate being so armed, provoked and engaged in a difficulty with Clinton Simmons in which the said Clinton Simmons was killed; and that he, at no time, prior to his killing Clinton Simmons abandoned such purpose, then Robert Tate is not entitled to an acquittal on the grounds that he acted in self-defense."
In Lofton v. State, 79 Miss. 723, 31 So. 420 (1901), this Court said:
"* * * This form of charge, declaring a defendant estopped to plead self-defense, is an exceedingly unwise one to be given. We have repeatedly condemned it, * * * It can never be proper, save in the few, very, rare cases where the case is such, on its facts, that a charge can be given embracing all the elements  not part of them, nor nearly all of them  essential to the estoppel." 79 Miss. at 734, 31 So. at 421.
In several other cases, this Court has emphasized the caution which should be exercised granting instructions restricting or cutting off a right of self-defense. Herrington v. State, 177 Miss. 837, 172 So. 129 (1937); Adams v. State, 136 Miss. 298, 101 So. 437 (1924).
*925 In Brown v. State, 186 Miss. 734, 191 So. 818 (1939), Brown was convicted of assault and battery with intent to kill and murder one Hilton by cutting him with a knife, and an instruction was granted at the request of the prosecution somewhat similar to that granted in this case, instructing the jury, in substance, that if it found that Brown had armed himself with the knife with the intention of provoking a difficulty with Hilton, and using his weapon to overcome him, and, while so armed, did provoke such difficulty with Hilton and cut him with a knife, that Brown could not plead self-defense. On appeal, this Court held that the giving of the instruction was error, there having been no evidence or inference therefrom that Brown had armed himself for the purpose of provoking the difficulty with Hilton and using his knife, if necessary, to overcome Hilton.
We do not think that the case now before us falls within the category of the "few very rare cases" where the giving of this instruction would be proper. We think the instruction should not have been given and substantially restricted or cut off appellant's right to defend upon the ground of self-defense.
At the conclusion of the direct examination of appellant, testifying as a witness in his own behalf, the trial judge announced a fifteen minute recess and instructed appellant to step down. The court then directed appellant and appellant's attorney not to converse or communicate with each other during the recess. This was error, as pointed out in Pendergraft v. State, 191 So.2d 830 decided by this Court on November 7, 1966.
As held in Pendergraft, supra, when the court is in recess and it would in no wise impede or interfere with the orderly or expeditious conduct of the trial, the defendant in criminal cases is entitled to have the advice of his counsel. A denial of this right, guaranteed by the constitution, is presumed to be prejudicial. It cannot be said that, because fifteen minutes is a relatively short time, no prejudice to appellant actually resulted.
It was error for the trial court to deny appellant access to his counsel during the recess.
Appellant also assigns as error the action of the trial court in sustaining an objection of the prosecution to certain testimony of one Tucker.
Witness Morris, who was the only eyewitness to the homicide, other than appellant, and who also had been wounded by appellant, had testified on cross-examination that he was a friend of appellant and had never cursed appellant "behind his back." His version of the actual shooting was most damaging to appellant's defense. Appellant offered Tucker for the purpose of showing bias and prejudice on the part of Morris and for the purpose of impeaching Morris' credibility. The testimony of Tucker, developed in the absence of the jury, was to the effect that he had heard Morris refer to appellant in the most opprobrious terms and curse him when he (appellant) was not present. He also said that Morris had entertained bitter feelings against appellant. We think that this testimony should have been allowed, its weight and value to be determined by the jury.
For the reasons stated, the judgment appealed from is reversed and the case is remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.