JOSEPH A. THOMAS *v.* THE STATE.

1. CRIMINAL PROCEDURE. *Continuance. Absent witnesses.*
   Absence of a material witness is no ground for a continuance in a capital case, if there has been opportunity for compulsory process, which has not been obtained.

2. SAME. *Trial. Practice. Jury.*
   An offer by the district attorney to contribute money for the sustenance of the jury, followed by larger overtures of the 'defendant's counsel, is no cause for reversing a conviction.

3. SAME. *Accused as witness. Instructions.*
   Testimony of the accused should have such effect as the jury think it deserves, unfettered by instructions to weigh it carefully and with great caution.

4. MURDER. *Self-defense. Combat.*
   A person who provokes a difficulty may plead that he slays his adversary in self-defense, unless he provides a weapon to be used if necessary in overcoming opposition.

5. SAME. *Instructions. Immaterial error.*
   Erroneous charges will not cause a conviction of murder to be reversed, if assuming the defendant's testimony to be true, no other verdict would be correct.

6. SAME. *Duel. Malice.*
   A man commits murder when he kills another in a duel, whether formal, or extemporary, and however fairly conducted.

APPEAL from the Circuit Court of Issaquena County.
HON. B. F. TRIMBLE, Judge.

The appellant was indicted for murder in Sharkey County, on February 10, 1882, and, next week, the venue was changed, on his

application, to the County of Issaquena, where the record was filed in the following June, and in November the accused was convicted as charged, and sentenced to imprisonment for life.   When the case was called first, at the November term, 1882, of the Circuit Court of Issaquena County, the appellant presented an affidavit for continuance, in which he set forth the facts which he expected to prove by Joseph Gibson, but failed to show that he had applied for process to compel the attendance of the witness.   The court refused the continuance, but allowed the affidavit to be read to the jury as the testimony of Gibson.

When seven jurors had been tendered and accepted a recess was taken, and afterward one of the defendant's counsel remarked to the court that he was informed by the sheriff that there was no provision allowing him to feed the jury, and he thought some order should be made about it, as eating was necessary to a man's life.   The district attorney then came forward, and said to the court in presence of the seven jurors, that he had already brought the matter to the attention of the court, and that for his part he would put up ten dollars toward the expense of feeding the jury, if there was no other provision made.  One of the defendant's counsel thereupon stated that he would give a hundred dollars for the same purpose if necessary, and another of his counsel said that he would give as much as any one.

After the close of the evidence, which was to the effect of the testimony stated in the opinion of the court, the following, among other charges, were given for the State: " 1. While the defendant is a competent witness under the law, yet the jury are the sole judges of the credibility of the witnesses, and, in weighing the testimony of the defendant, they are at liberty to take into consideration his situation, and the motive or motives he may have for testifying falsely; and *it is the duty of the jury to weigh his testimony carefully, and to scrutinize the same with great caution.*"  " 2. A person cannot invoke a difficulty and slay his adversary therein, and then be heard to urge that the killing was done in self-defense."

*W. R. Spears* and *Miller & Hirsh,* for the appellant.

1. The affidavit for a continuance contained a legal showing,

and the testimony of the absent witness was material to the defense. While matters of continuance are within the discretion of the lower court, the action taken is subject to review, and an abuse of the discretion will cause a reversal. *Noe* v. *State*, 4 How. 330; *McDaniel* v. *State*, 8 S. & M. 401; 2 Graham & Waterman on New Trials 700. The absent witness was in a position to see what the deceased was doing with his right hand when shot, and this no other witness, except the accused, could explain.

2. An offer was made by the State's attorney to contribute ten dollars to feed the jury. This is fatal to the verdict. Absolute impartiality is essential even in a civil case, and a new trial will be granted wherever this is endangered by the successful party's fault. 2 Graham & Waterman on New Trials 303. If a party conducts himself in a manner calculated to influence the jury improperly, a verdict in his favor will be set aside. *Allen* v. *Aldrich*, 9 Fost. (N. H.) 63. It is no answer to say that the defendant outbid the State. This auction was commenced by the district attorney, and its consequences are chargeable to this officer. It is idle to argue that a jury thus impaneled could be impartial.

3. Instructing the jury to view the defendant's testimony with suspicion was manifestly erroneous. This evidence should have been treated like that coming from any other source. Charges on the weight of evidence are illegal. It is enough that counsel argue the facts, without having the court's influence thrown into the scale. Instructions like this one have been decided to be ground for reversal in Nevada. *State* v. *Johnson*, 16 Nev. 36. Unless the testimony of the accused can go to the jury like that of another witness, the statute which permits him to give evidence at his trial is a mere snare.

4. The charge for the State about provoking a difficulty with the deceased is erroneous. It was for the jury to say whether the accused was the aggressor. But this instruction omits the qualification that the person who does this must have armed himself for the conflict. No law exists, such as this instruction announces. The rule is that he must arm himself with a deadly weapon, and provoke a difficulty with the intention of killing his victim.

Nothing of this kind appears in the evidence, and the charge does not correctly state the law. Curing one charge by another is a bad practice for capital cases. *Bradley* v. *State*, 31 Ind. 492. No instruction withdraws this one from the jury or modifies its hurtful influence.

*T. M. Miller*, for the appellant, argued the case orally.

*T. C. Catchings*, Attorney General, for the State, argued orally, and filed a brief.

1. It is not alleged or shown that the accused had no opportunity to obtain compulsory process, or that he applied for a subpœna for the witness. When the court ordered the affidavit to stand for the absent testimony, it gave the prisoner more than he was entitled to claim. The statute, so far as it regulates the right to a continuance, does not apply in any case till it has been first made out to the satisfaction of the court that but for a proposed admission of the evidence, a continuance would be proper. *Strauss* v. *State*, 58 Miss. 53. A proper result was reached by the trial, and, aside from the question of discretion, which precludes a reconsideration, no error was committed in refusing the continuance. Offering to contribute ten dollars toward defraying the expense of feeding the jury, could not have influenced the verdict. But if it had such tendency, it was corrected by the greater liberality of the defendant's counsel. They offered twenty times as much as the district attorney, who, if he had any sinister motives, must have hung his diminished head in shame.

2. Abstractly speaking, the law was correctly stated in the first instruction for the State. Testimony given by a person on trial for murder, should be carefully considered by the jury and scrutinized with the utmost caution, in order to give it the weight which it deserves for or against the prisoner. They are not told to view his statement with suspicion, as was implied in the charge in the case of *State* v. *Johnson*, 16 Nev. 36. In the cases of *People* v. *Cronin*, 34 Cal. 191; *People* v. *Morrow*, 60 Cal. 142, it was held proper to instruct the jury that they should carefully determine the amount of credibility to which the testimony of the accused was entitled. A pardoned felon, who testified, in the case of *United States* v. *Jones*, 2 Wheeler 451, to a mutiny at sea, and the mur-

Conclusion of the briefs.

der of the officers of a vessel by the crew, was presented to the jury, in the charge of the court, as unworthy of belief unless supported by other witnesses or by circumstantial evidence.

3. But the instruction is unimportant in this case, for the reason that if the jury believed Thomas, they were compelled to convict him. By his own testimony, he provoked the combat, after preparing a weapon to be used in overcoming his opponent, and killed him without giving time for defense. It is no answer to say that he was merely seeking an explanation, because he approached his enemy in such a manner as was certain to produce a conflict. The second instruction for the State possibly does not fully state the doctrine, but the fact that the weapon was prepared, and put within easy reach by the accused before he approached his victim, is admitted by the appellant, and is evidenced by other circumstances. No doubt exists as to this fact. It is confessed. And if the jury found the others, this one made out the case. After preparing the pistol, and approaching Murphy behind, he accosted him with a challenge, and did not even wait to see what would be the result. He took Murphy unawares while he was quietly sitting on the steps, startled him, and before he could turn round, shot him in the back.

*Miller & Hirsh,* for the appellant, in reply.

The testimony of the defendant must be treated like that of any other witness. Viewed in this light it does not criminate him. It is not argued, merely because the appellant's life was threatened by the deceased, that the latter was at his mercy, but it is insisted that when the deceased made a motion toward the execution of his threat, the accused had the right to anticipate him. *Cotton* v. *State,* 31 Miss. 504. Whether the language and conduct of Thomas amounted to an attack upon Murphy was a question for the jury to decide. The attorney general assumes that he provoked Murphy's demonstration for the purpose of killing him. This is unwarranted. It cannot be held, as matter of law, that, because the accused said he was ready to be shot and advanced on the other man, he did this intending to slay his adversary. It was for the jury to say whether he acted in this way in order to take the life of the man whom he killed or from some other motive.

CHALMERS, J., delivered the opinion of the court.

There was no error in refusing the continuance, no sufficient efforts to procure the attendance of the witness having been shown. The defendant obtained more than he was really entitled to in having his affidavit submitted to the jury as the testimony of the absent witness.    The remarks of the district attorney and of counsel for the defendant, made in the presence of the jury, as to their willingness to contribute toward the expense of feeding the jurors during the trial were highly improper, but we cannot conceive that they affected the verdict.   Neither party actually contributed anything, as the jurors must have known, and on the score of attempting to obtain undue favor with them by their offers, both parties were alike guilty, except that the defense far outbid the prosecution in amount.

Neither the first nor the second instruction for the State is free from objection.   It was enough to tell the jury in the first instruction that they might consider the situation of the defendant and the motives he had to induce him to testify falsely.   The addition of the words, that it was their duty to weigh his testimony carefully and with great caution, was erroneous as constituting a charge upon the weight of evidence.   It was the duty of the jury to give his testimony just such weight as they thought it, under the circumstances, entitled to.   When they have done this they have done all that the State has a right to demand. . The second instruction was defective in omitting the qualification that the weapon was procured or prepared with a view of being used if necessary to overcome opposition.   These instructions must cause a reversal unless, taking the testimony for the defense as absolutely true, the verdict is the only one that would have been legally correct.

The facts as stated by the defendant himself are as follows : There had been a bitter animosity between the slayer and the slain, and mutual threats of killing had been expressed.   A compromise and settlement had been brought about by mutual friends, but after its acceptance by both sides the deceased had expressed an intention of killing the defendant.   A few days after knowledge of this threat had been . communicated to the defendant both parties at-

tended a social entertainment given at night by the children of the village in the court-house. The defendant states that while sitting at one end of the gallery, which extends along the front of the building, he suddenly perceived the deceased sitting on the steps of the gallery at the other end, his back being turned toward the building. Deceased was engaged in conversing with a gentleman sitting near him on the steps. The defendant says that as soon as he recognized the deceased he drew his pistol from his hip-pocket, placed it in the pocket of the linen duster coat which he was wearing, rose from his seat, advanced toward the deceased until he was within a few feet of him, and then, halting behind and a little to the left of him, said : "Now I'm ready for you to shoot." Deceased instantly rose from his seat, throwing his hand behind or to his side as he did so, and the defendant at once fired. The ball struck the deceased in the back, two inches to the left of the backbone. He sprung forward off the steps, run a distance of twenty-five yards, and fell to the ground. He was taken into the house and died the next day. This is the version given by the defendant. The man who was sitting by the side of the deceased says that the latter was shot while he was still sitting, and before he had time to rise, and the downward range of the ball seems to attest the truth of this statement; but this difference in the two statements is wholly immaterial.

Viewed in the most favorable light for the defendant, his act in preparing his weapon for quick and easy access, and walking up to the deceased and calling out, when he had approached to within a few feet, " I am ready for you to shoot," was a challenge to fight with deadly weapons, an impromptu duel. It is impossible to place any more favorable construction than this upon such acts and words. He who slays another in a duel, whether formal or suddenly improvised, and however fairly conducted, is legally a murderer ; but he who walks up behind an antagonist unaware of his presence and invites or challenges him to fight, and then shoots him in the back before he can turn or draw a weapon, is not a duelist, but an assassin. It is true that the defendant says that he shot because the deceased threw his hand behind him and thereby induced him to

believe that he was about to draw a pistol, but this was exactly what he had himself invited deceased to do and that which any man similarly situated and accosted would inevitably have done, if he was armed, under the first instinct of self-preservation. He who by his own conduct compels another to get ready for self-defense cannot claim that the responsive preparation has put his own life in danger, and thereby justified him in stopping the preparation by slaying him who was making ready for a combat into which he had been forced. Taking the defendant's own testimony therefore as absolutely true, the verdict was manifestly correct, and any other would have been clearly against the law and the facts.

*Affirmed.*