ELBERT HUNT *v.* THE STATE.

1. HOMICIDE. *Provoking a difficulty. Intent to use weapon. Self-defense.*
   Where accused, having gone into a fight armed, drew his pistol and shot deceased, he is not deprived of the right of self-defense by the mere fact that he had procured a pistol with a view of bringing on the fight or of using it in *any* way in the fight.

2. SAME. *Right of self-defense, how lost.*
   But, to deprive him of the right of self-defense, it is not necessary that he intended at the time to use the pistol in *killing* his antagonist; it is enough to show that he procured the pistol and provoked the difficulty, intending at the time to use it, if necessary, in inflicting on his adversary *great bodily harm*, or in committing *any* felony.

3. SAME. *Instruction. Intent to kill. Previous malice. Sudden provocation.*
   On trial for murder, there being evidence that accused went to the house of deceased to beat him, but, in the fight which ensued, retreated, and, while doing so, was knocked down three times with a hoe, whereupon he drew his pistol and shot deceased, the court charged that if he went to the house of deceased to do some unlawful act, and, in pursuance of such unlawful design, provoked a difficulty and killed deceased, then it was murder, although the jury may further believe that deceased, at the time of the shooting,

was striking defendant with a hoe or other deadly weapon. *Held*, erroneous, as warranting an inference of malice aforethought from an intent to do *any* unlawful act, and because it omits all reference to the facts tending to show abandonment of the conflict.

FROM the circuit court of Desoto county.

HON. EUGENE JOHNSON, Judge.

Appellant, Hunt, has been convicted of murder and sentenced to be hanged. Briefly stated, the circumstances of the killing were as follows: Deceased, John Scott, married appellant's daughter, and afterwards had frequent quarrels with her. On the night of the killing Hunt went to the home of Scott, after Scott and his wife had retired, and called Scott, and told him that he had come to whip him. Hunt was profane and abusive, but Scott asked him to leave the house, and stated that he did not wish a difficulty, and that he and his wife had settled their differences and quarrels. As Hunt did not withdraw, Scott got up and went into the yard, picking up a hoe or hoe handle as he went out. Hunt followed him, advancing upon him with a stick in his hand. Scott knocked him down. Hunt got up and continued to advance, whereupon Scott knocked him down a second time. Hunt arose again and ran upon Scott, and was then knocked down a third time; and, while on his knees, he drew his revolver and shot Scott. This occurred when Hunt was just outside the yard and Scott was just inside. The opinion contains a further statement of the facts.

The points of law arising from the instructions sufficiently appear in the opinion. The fifth instruction, which the court holds to be erroneous, but to be cured by the ninth given for defendant, is one on the subject of reasonable doubt, which tells the jury that upon a comparison of all the facts and circumstances, if they *conscientiously* believe that defendant's intention was to provoke a difficulty and use the pistol in it, this is sufficient to meet the requirement that this must be shown beyond a reasonable doubt.

*Powel & Dabney,* for appellant.

It is certain that when appellant shot, he was attempting to avoid the conflict by retreating.    He had gone entirely outside the yard.    He had done nothing worse than to go to his daughter's house and tell her husband he intended to beat him.    He had made no attempt to put his threats in execution, and it was only when murderously assaulted, and after he had retreated outside the yard, that he made an attempt to defend himself. It was only when his life was in danger that he offered any resistance.    If he had intended to provoke a difficulty and use a weapon, he had repented of it, and had abandoned the conflict, and therefore did not lose his right of self-defense.    2 Bishop on Criminal Law, § 576.    The first instruction should have been given without change.    *Cotton* v. *State,* 31 Miss., 504; *Thomas* v. *State,* 61 *Ib.,* 60.    It was not enough to warrant conviction that accused provoked a difficulty at a time when he was armed with a deadly weapon.    The jury should have been told that they must also believe the weapon was procured for the purpose of provoking a difficulty.    *Thomas* v. *State, supra.*

The third instruction is in direct conflict with the doctrine announced in *Cotton* v. *State, supra.*    It deprives defendant of the right of self-defense, even if he intended at the outset to inflict little or no violence on his antagonist.    The whole theory of the instructions for the State seems to be that appellant had lost his right of self-defense merely because he had a pistol on the night of the difficulty.    They not only deprive him of the right of self-defense, if he had the pistol and sought to use it in inflicting any injury, however slight, but deny him the benefit of evidence tending to show he had abandoned the conflict.

*Frank Johnston,* attorney-general, for the state.

There was no error in modifying the instructions.    The rule which runs through defendant's instructions is incorrect.    It is

not necessary to show that a person who provokes a difficulty, armed with a deadly weapon, intended to use it to overcome or slay his adversary. It is sufficient to deprive him of the right of self-defense, that he procured the weapon for the purpose of using it in the difficulty. *Long* v. *State*, 52 Miss., 23; *Thomas* v. *State*, 61 *Ib.*, 60. The intent is presumed from the use of the weapon. *Lamar* v. *State*, 63 Miss., 265. There was no error in the modification of the first and ninth instructions after the argument for the defense had closed. *Wood* v. *State*, 64 Miss., 761; 1 Bishop Crim. Pro., § 976.

WHITFIELD, J., delivered the opinion of the court.

The first and second charges asked by the defendant informed the jury that, to deprive the defendant of the right of self-defense, he must have procured the pistol, intending at the time he procured it to bring on the difficulty, and use the pistol in the difficulty in overcoming or slaying the deceased if necessary. These instructions, as asked, are incorrect. It is not necessary, to take away the right of self-defense in such case, that the defendant should intend to use the pistol to overcome or slay his adversary. It is enough if he intends to use it in committing upon the deceased great bodily harm, or any felony. As asked by the defendant, therefore, the instructions should have embraced these qualifications. The modifications of the court, apparently, did not proceed upon this line, however; but, as written, told the jury, in the first modification, that it was enough to deprive the defendant of the right of self-defense, if he procured the pistol with a view of bringing on the difficulty, merely; and, in the second modification, if he "armed himself with it, to be used in the fight"—to be used in any way—in overcoming his adversary, committing upon him any felony, or in merely inflicting injury, however slight. The modifications, therefore, are also incorrect, as written. This court says, in *Thomas* v. *State*, 61 Miss., 60: "The second instruction was defective in omitting the qualification that the weapon was pro-

cured or prepared with a view of being used, if necessary, to overcome opposition." *Long's Case*, 52 Miss., 38, the opinion in which was delivered by the same eminent judge who delivered the opinion in *Thomas' Case*, accords perfectly with this, properly understood. It is at once, however, suggested by the case made by the testimony in the record that the jury must have understood these instructions, as modified, to mean that the "use of the pistol in the fight," referred to by the court, was such use as would naturally be made with a deadly weapon, to wit, a deadly use—a use resorted to in overcoming opposition, or committing any felony upon the deceased. We do not, therefore, regard the errors in the modifications as reversible errors, but have noticed them that the charges may be properly framed on the new trial.

The seventh instruction should have been refused altogether, as being without any testimony to warrant it. There is no evidence that defendant was "passing his son-in-law's house," and casually "stopped in."

The observations hereinbefore made respecting charges numbers one and two for the defendant, both as originally asked and as modified, apply to charge number nine for defendant, as asked and as modified.

The modifications of instructions numbered one and nine for defendant, were made, as we are informed by the bill of exceptions, "after the argument for the defendant had closed;" and we are further informed, that "the district attorney, in his closing argument to the jury, commented on the fact that the law, as announced and argued by defendant's counsel in instructions one and nine, had been so charged by the court as to put an entirely new feature on the case." And this action of the court is assigned for error. In *Wood's Case*, 64 Miss., 761, "additional instructions were given for the state after the argument had proceeded." The case here is much stronger for the defendant, and if it be conceded that the principle of that case governs this, the ground of complaint here is much stronger as

to the propriety of the course pursued under the circumstances. Speaking for myself as to this matter, I desire very earnestly to commend, as the proper procedure in the matter of settling the instructions—at least in all important cases—the practice established in the fifth judicial district by the learned judge therein presiding. That practice is to have the jury retire at the close of the testimony, and require counsel on both sides then to present, seriatim, their instructions, hearing objections to the same, if any, and argument thereon. The instructions thus settled are then given to the jury, presenting the whole law in one connected view, after full consideration. I should regard it as a decided step forward in the wise administration of public justice if this eminently proper procedure were adopted in all the judicial districts of this state where instructions are only given upon written request. It would conduce in the highest degree towards securing the trial "impartial" in the sense of the constitution. So to proceed does not deprive the court of the power, at any time in the progress of the trial, of giving additional charges, or modifying charges, but it would almost surely make applications for additional charges or modifications unnecessary, and complaint, such as is here made, would disappear.

The fifth instruction for the state is erroneous. *Sam. Burt* v. *State, ante,* p. 408. But it is cured by the ninth given for the defendant.

The third instruction for the state is clearly erroneous. By it the jury are told that if the "defendant armed himself with a deadly weapon, and went to the house of the deceased, at night, to do some unlawful act, and, in pursuance of such unlawful design, he provoked a difficulty, and in such difficulty he killed deceased, then it was murder, although they may further have believed that deceased, at the time of the shooting which produced death, was striking defendant with a hoe or other deadly weapon." It is not the law that he would have been guilty of murder, in the case stated, if his purpose was to

do "some" (that is, any) unlawful act, and, in pursuance of "such" (that is, any) "unlawful design," provoked a difficulty, and killed the deceased. The instruction tells the jury that the malice aforethought, essential to constitute murder, may consist, in the case of one arming himself with a deadly weapon and going to another's house, at night, in the intent to do any unlawful act. Again, it omits all reference to the qualification as to the defendant's having, in good faith, abandoned the contest. In *Cannon* v. *State*, 57 Miss., 147, Chief Justice Campbell says, with great clearness: "A mere grudge or malice, in its general sense, is not sufficient to bring a case within the principle that where one, having express malice towards another, kills that other, the killing is referable to the previous malice, and not to a provocation at the time of killing. To do this there must be a particular and definite intent to kill, so that the provocation is a mere collateral circumstance, the intent to kill existing before and independently of it. It is for the jury to say whether the act of killing proceeded from a deliberate purpose previously formed to kill, then and there carried into effect in pursuance of the previously concerted design, or whether the act was done because of the present circumstances, without regard to the previous design." Says Lord Hale (1 Hale P. C., 479, 480): "But Mr. Dalton thinketh it to be *se defendendo*, though A. made the first assault, either with or without malice, and then retreated. It seems to me that if A. did retreat to the wall, upon a real intent to save his life, and then, merely in his own defense, killed B., it is *se defendendo*." This is the doctrine now. 2 Bish. Crim. Law, § 566; *Stoffer* v. *State*, 15 Ohio St., 47 (a finely reasoned case). What is the testimony as to both aspects of this charge? Aaron Scott says that defendant said he "wanted to beat or frail hell out of him;" that deceased shut the door and defendant opened it; that when deceased picked up the hoe, having gone out of the house to the cistern, defendant was still on the porch; that the moon was shining brightly, and that neither

party had anything in his hands in the house, or when they went out in the yard; that, when defendant was knocked down the third time, he was outside the yard and deceased inside; and that defendant shot deceased from his knees as deceased advanced on him with the broken hoe handle in his hand. There is a failure to show just how the defendant got from the place where the conflict began, when defendant, being twice knocked down, still advanced, to the place outside the yard— according to Aaron Scott—where he fired, having been a third time knocked down. Can it be confidently affirmed, on this testimony, that defendant went to the house intending to kill deceased, or commit a felony upon him? If his purpose, from the outset, had been such, why did he not shoot sooner? Why not begin in the house? Why not fire the first time he was knocked down? Why wait till he was knocked down outside the yard? Is it clear that he had not, in good faith, abandoned the fight, and shot only when and where he did to save his life? We express no opinion on these points. We suggest the inquiries only to illustrate the propriety of the conclusion at which we have arrived—that this charge was erroneous, is not cured, and may have misled the jury. Wherefore the judgment is

*Reversed.*