DURHAM *v.* STATE.

(Division B. Dec. 15, 1930.)

[131 So. 423. No. 28858.]

T. A. Clark, of Iuka, for appellant.

**Wm. A. Shipman,** Assistant Attorney-General, for the
state.

**Anderson, J.,** delivered the opinion of the court.

Appellant was indicted and convicted in the circuit court of Tishomingo county of the murder of Forrest Russell. The jury returned a verdict of guilty, but disagreed as to the punishment. Thereupon, the court sentenced appellant to the penitentiary for life; from which judgment appellant prosecutes this appeal.

Appellant assigns and argues as errors the giving of certain instructions requested by appellee, and the refusal of certain other instructions requested by appellant, and the action of the court in admitting in evidence an alleged confession by appellant, over his objection.

The deceased, Forrest Russell, was aggrieved at appellant, because he claimed that appellant had taken his two daughters out at night to a picture show, and failed to bring them back within a reasonable time. On the evening of October 30, 1928, appellant and the deceased met in the home of Gillis Taylor, where an altercation occurred between them, in which altercation the deceased threatened appellant's life, and the latter threatened the life of deceased. The altercation grew out of the grievance of deceased toward appellant on account of the latter's conduct with reference to the daughters of the former. There was nothing in the evidence to indicate any misconduct on the part of appellant towards the daughters of deceased, except that deceased claimed that appellant took them out at night to a picture show, and failed to bring them back home within

a reasonable time. The evidence tended to show that the deceased said to appellant that, if he did not make an explanation of his conduct toward his daughters, he was going to kill him; and that appellant replied that he was going away and get a gun and come back and shoot hell out of deceased. Soon after this altercation both appellant and the deceased left the home of Gillis Taylor, and were gone only a short time. The deceased soon returned to the home of Gillis Taylor, and was in the home, talking to Gillis Taylor and his family; there were some other persons present. Shortly after the deceased returned to the home of Gillis Taylor, appellant returned in his car. The evidence showed that, thereupon, the deceased arose from his seat, and approached the entrance to Taylor's home, at the same time the appellant was approaching the entrance from the outside. Those present in Taylor's home evidently expected a serious difficulty between appellant and the deceased, for, before the shooting began, the ladies present screamed and ran out of the house. Gillis Taylor followed the deceased as he was approaching the door to the residence; and testified that, as deceased was approaching the door, he put one hand in his pocket and the other toward his breast, indicating a purpose to draw a weapon.

Appellant testified that as he approached the door he saw the deceased coming toward him, making a motion as if attempting to draw a weapon; and, thereupon he (the appellant), to save his own life, shot at the deceased four or five times, killing him. Appellant also testified that the object of his mission in returning to the home of Taylor was to see a young lady, or young ladies, who were there. Appellant denied that he went off and got a pistol, but testified that he already had one in his car.

On cross-examination, appellant was asked if he did not state, during the altercation which took place shortly before the killing, that he was going to get a gun and

shoot hell out of deceased. He replied that he might have made such a statement, but did not remember whether he did or not.

Shortly before the killing, the deceased tried to borrow a gun from a member of the Taylor family, but failed to get one. It was found, after deceased had been killed, that the only weapon he had on or about his person was brass knucks, which were found in one of his pockets.

The court gave the following instruction for the state, the giving of which appellant assigns as error: "The court instructs the jury that while it is true in this case, as in all criminal cases, the defendant is presumed to be innocent until he is proven guilty and that this presumption of innocence goes with the defendant throughout the entire trial and until overcome by competent testimony, and that while it is further true that the burden of proof in this case, as in all criminal cases, is upon the State to satisfy the minds of the guilt of the defendant from the evidence beyond a reasonable doubt, yet the court now says to you that this presumption of innocence which the law throws around the defendant as a shield and safe-guard is not intended to shield from punishment anyone who is in fact guilty, but is simply a humane provision of the law to guard against the conviction of any innocent person, and the court further says to you positively that if you believe from the evidence in this case beyond a reasonable doubt that the defendant is guilty as charged in the indictment, then it is your sworn duty to say guilty by your verdict, regardless of the presumption of innocence and the further fact that the burden of proof is upon the state."

The criticism of this instruction is that it was an argument by the court to the jury on the presumption of innocence, when no instruction on the presumption of innocence was asked and given for appellant. Appellant objected specially to the word "positively," used in the

instruction. We think appellant's criticism of the instruction is not well founded. It embodies correct principles of law, and is more favorable to appellant than to the state. The word "positively," used in the instruction, adds nothing to it—the instruction was positive without that word.

The court gave the following instruction for the state, to which appellant objects, because he argues that it cut him off from the right of self-defense: "The court further charges the jury for the state that if they believe beyond all reasonable doubt from the evidence in this case that the defendant, Raymond Durham, wrongfully had his mind made up prior to the time of the killing to willfully, feloniously and maliciously shoot, kill and murder the deceased, Forrest Russell, and that a short time prior to the killing he went off to his home, armed himself with a deadly weapon for such purpose and returned to the place of the killing, intending to carry out such unlawful purpose so formed in his mind and that, so armed and with such unlawful purpose in his mind and with the purpose of carrying out such intent on his part, to wrongfully, wilfully and maliciously and feloniously kill and murder said deceased, attacked deceased and so killed him, and that he, at no time prior to the time of the actual killing of the deceased, abandoned such purpose, then, and in that event, he would not be entitled to set up any act or conduct of the deceased either before or at the time of the killing by way of defense of such killing."

Appellant's argument is that this instruction deprived him of the right of self-defense, and that there was not sufficient evidence in the case upon which to base the charge. To sustain that contention, appellant cites Lofton v. State, 79 Miss. 732, 31 So. 420, 421; Hunt v. State, 72 Miss. 413, 16 So. 753, and other decisions of our court holding that such an instruction, under the facts of those particular cases, was error. Appellant

lays emphasis upon what the court said in the Lofton case with reference to this character of instruction. This language was used in that case: "This form of charge, declaring a defendant estopped to plead self-defense, is an exceedingly unwise one to be given. We have repeatedly condemned it, as shown by cases cited in the very able brief of counsel for appellant. It can never be proper, save in the few, very rare cases where the case is such, on its facts, that a charge can be given embracing all the elements—not part of them, nor nearly all of them—essential to the estoppel."

In none of these cases did the court hold that the instruction was not proper in any case. On the contrary, they all hold that there might be cases in which the instruction should be given for the state. We are of opinion that this is a case of that character. The evidence for the state tended to show, either directly, or by reasonable inference, every fact set out in the instruction, which the court told the jury, if the evidence established, beyond a reasonable doubt, appellant would be cut off from the right of self-defense. Such an instruction has often been approved by decisions of this court in the proper cases. See Ex parte Wray, 30 Miss. 673; Hunt v. State, 72 Miss. 413, 16 So. 753; Thomas v. State, 61 Miss. 60; Stubblefield v. State, 142 Miss. 787, 107 So. 663.

Appellant argues that the instruction is erroneous, in that it fails to embody a necessary element to constitute murder, namely, an intent to kill and murder with malice aforethought. We think that a reading of the instruction itself answers that criticism; and, furthermore, all the instructions, construed together, clearly, and forcibly embody all the necessary elements of murder.

Appellant assigns as error the giving of another instruction for the state, because it failed to embody the necessary elements that the killing must have been with malice aforethought. The instruction contains these

words: "Unlawfully, wrongfully, and feloniously took the life of deceased with the wilful, deliberate and felonious design and intent to unlawfully kill and murder" the deceased. We think this language clearly embodies the element of malice aforethought.

Appellant makes the same criticism of another instruction given the state. For like reasons there was no error in giving the instruction.

The court refused to give the following instruction requested by the appellant: "The court charges the jury for the defendant, that if they believe from the evidence in this case, that a short time before the difficulty, the deceased threatened to kill the defendant, then the defendant had a right under the law to procure a pistol and carry it." There was no error in refusing this instruction. Molphus v. State, 124 Miss. 584, 87 So. 133, 135. The court, in that case, among other things, said: "The defendant was not on trial for carrying a concealed weapon, and the court was not required to instruct as to his right to carry a weapon. The court was here dealing with the use of the weapon . . . and not with the lawfulness of its being carried."

There was no error in the admission, over appellant's objection, of the testimony of Pace as to appellant's confession. The evidence was ample to show that the confession was free and voluntary. This was peculiarly an issue of fact for the trial court, who heard the witnesses and saw their demeanor of the witness stand.

Taking as true the material facts which the state's evidence tended to establish, and which the jury found to be the facts, what was said by the court in Thomas v. State, 61 Miss. 60, seems appropriate in this case: "Viewed in the most favorable light for the defendant, his act in preparing his weapon for quick and easy access, and walking up to the deceased and calling out, when he had approached to within a few feet, 'I am ready for you

to shoot,' was a challenge to fight with deadly weapons, an impromptu duel. It is impossible to place any more favorable construction than this upon such acts and words. He who slays another in a duel, whether formal or suddenly improvised, and however fairly conducted, is legally a murderer.''

Affirmed.