THIGPEN v. STATE.

Jan. 4, 1954

No. 38946 47 Adv. S. 82 69 So. 2d 241

*Henry & Barbour,* Yazoo City, for appellant.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

520

LOTTERHOS, J.

The appellant, A. T. Thigpen, was indicted on a charge of murder of Elvin Jackson, Jr. The parties involved were Negroes. Appellant was found guilty of manslaughter and given a sentence of ten years in the penitentiary. From that verdict and sentence, he appeals. The facts shown by the record are summarized as follows:

Appellant was a tenant on a plantation in Humphreys County near the Town of Louise, and resided with his wife and ten children in a house on the plantation. The deceased and his wife resided on the same plantation about two miles from appellant's house. The father of deceased, Elvin Jackson, Sr., lived with his family a short distance from the home of deceased. There was a "turn row" or plantation road between these houses. About a mile beyond the homes of the two Jacksons and on the side away from appellant's house, there was located the residence of the plantation manager, a Mr. Bennett.

Prior to the date of the homicide, Saturday, August 23, 1952, there had been no trouble between Thigpen and the Jacksons. On that night at about nine o'clock there was a difficulty between appellant and Elvin Jackson, Sr., on the streets of Louise. The evidence as to the nature of the trouble is conflicting, but there is some testimony that appellant attempted to cut Jackson, Sr. There is proof that after this episode Jackson, Sr., went to appellant's house and drove along the roads in the vicinity, making threats that he would kill the appellant; and also that these threats were communicated to appellant, when he arrived at his home later. Jackson, Sr. denied making these threats. There is also evidence that at some time in the evening, in the town of Louise, Jackson, Jr., the deceased, slapped the son of appellant, and that appellant was told of this event. The evidence is conflicting with respect to all of these happenings, but the above comments will give a general idea of the back-

ground of the killing. It was shown that during most of that Saturday afternoon and evening, deceased and his wife had been visiting in the home of Jackson, Sr.

Late that night, between eleven and twelve o'clock, deceased and his wife left the home of Jackson Sr. on their way to their own home nearby. Jackson, Jr. had his shotgun with him. On the way, they met appellant, who shot and killed Jackson, Jr. Appellant claimed self-defense. The evidence is in conflict on practically all points.

The case made out by the prosecution was as follows: Deceased had previously left his shotgun at his father's house for safekeeping, and was taking it home unloaded. On the way home, deceased and his wife met appellant, who was armed with a rifle. Appellant said ''Junior'' (that being the name by which deceased was commonly known); the wife of deceased ran toward appellant, saying ''Don't shoot''; appellant fired once and struck the wife in the arm; and appellant then fired a second time, killing Jackson, Jr. Deceased did not fire the shotgun. The wound in the wife's arm was made by a rifle bullet. No empty shotgun shell was found afterward. An inspection of the shotgun showed that it had not been fired. The rifle bullet that killed deceased entered his back and came out through his chest. This proof showed a cold-blooded murder.

The case for the defense was as follows: Appellant returned to his house from Louise late in the evening, and learned that Jackson, Sr. had been there and had been going up and down the roads in the neighborhood threatening to kill him. Appellant decided to go to the home of Mr. Bennett, the plantation manager, to report this and seek protection. He took his rifle, with one cartridge in it, and his pistol, unloaded, and also some pistol cartridges in his pocket, and started to the manager's house. He armed himself because he was afraid of Jackson, Sr. He did not go by the public road as he might meet Jackson, Sr. there, but proceeded through the fields

by the most direct route, which was by way of the scene of the killing. When he saw deceased and his wife approaching him, he said "Junior." Deceased then "squatted down" and fired the shotgun. Appellant immediately shot back with his rifle and killed Jackson, Jr. An inspection of the shotgun showed that it had been recently fired. A deputy sheriff and the plantation manager testified that, after the shooting, the wife of deceased said that she did not know who had shot her, and that both guns were fired. Dr. Carl Day of Yazoo City, who treated the wound of the wife of deceased the next day, testified that there was wadding similar to that from a shotgun shell in the wound, the hole was large enough to put a hand in it, and it was a shotgun wound, in his opinion. The rifle bullet entered the chest of deceased in front, and came out of his back. This proof showed self-defense.

■■ One ground of error assigned is that the proof is insufficient to support the verdict, and that the appellant should have a peremptory instruction or at least a new trial, for that reason. We think not. This case presents a question for the jury. The evidence is conflicting throughout, and, if the jury accepts the state's proof as true, the guilt of appellant is clear.

■■ Another assignment is that the case should be reversed for refusal of appellant's instruction No. 11, dealing with one phase of reasonable doubt. We find it unnecessary to discuss this instruction for the reason that appellant was granted six instructions on this subject matter, and two of them particularly (No. 4 and No. 8) adequately cover the proposition contained in No. 11.

■■ It is also contended that it was error to grant a manslaughter instruction in this case, as appellant was either guilty of murder or was innocent, and it was prejudicial to him to permit the jury to consider manslaughter. Appellant, in his brief, frankly admits that

this proposition has been settled against him by previous decisions, which will control, if followed. We feel that those cases are controlling here. See Calicoat v. State, 131 Miss. 169, 95 So. 318; Bradford v. State, Miss., 161 So. 138; and Perry v. State, Miss., 44 So. 2d 393.

 The last and most serious assignment of error concerns the granting of instruction No. 4, on behalf of the prosecution. This instruction is in the following language:

"The Court instructs the jury for the State that if you believe from the evidence beyond a reasonable doubt that defendant was looking for or lying in wait for deceased with the unlawful, wilful, and felonious intent to kill him or do him great bodily harm and that he had not abandoned this intent at the time the homicide occurred and that he accosted deceased with this intent, then he cannot be said to have acted in self defense."

We have concluded that this instruction should not have been given, and that the rights of appellant were seriously prejudiced thereby. There are three valid criticisms of this instruction, and we shall comment briefly on them. (1) It refers to "looking for or lying in wait for deceased" with intent to "kill him or do him great bodily harm." There is slight, if any, evidence from which to infer that appellant was lying in wait for *Jackson, Jr.* His difficulty earlier in the evening had been with *Jackson, Sr.*, and it was Jackson, Sr., according to appellant's proof, who had been seeking him and making threats to kill him. (2) The only proof with respect to the purpose and intent of appellant in arming himself and going to the scene of the killing is that offered in defense, which has been summarized. There is no evidence to the effect that appellant left his home, armed, with an unlawful intent, but only a possible inference from his presence at the scene of the shooting, with a rifle in his possession. (3) Also, this instruction says "and that he accosted deceased with this intent." The word "accost" is defined as "to approach; make

up to; to speak first to; to greet." It does not convey the meaning of attacking, or provoking, or molesting. Admittedly, appellant said "Junior" when the parties approached each other, but this "accosting" was not the crime charged, regardless of the intent.

With these criticisms in mind, we note that the jury was told that if it believed the things mentioned in the instruction then the appellant "cannot be said to have acted in self defense." That is, regardless of the evidence of self-defense adduced by appellant, the jury could not give any effect thereto, and appellant was cut off from relying on it. We come now to a consideration of some of the authorities dealing with this type of instruction.

In Lofton v. State, 79 Miss. 723, 31 So. 420, the Court reversed a conviction of murder, where the defense was a claim of self-defense, on account of the granting of an instruction similar to the one now under consideration. In the opinion, the Court said:

"But the third instruction for the State is fatally erroneous, in attempting to inform the jury when the defendant would be estopped to plead self-defense, without including all the elements of fact essential to the estoppel. There is irreconcilable conflict between not only the defendant's testimony and the State's, but (as to the stick) between the other witnesses for defendant and those for the State. If the defendant and his witnesses are to be believed, then the killing was in self-defense; and the defendant had a right to have instructions presenting his theory of the case, and ought not to have been deprived of that right by a charge, based on part only, of the testimony, declaring him to be estopped from pleading self-defense. There is no evidence at all in this record as to what his purpose was in procuring the gun, except his own, and that shows a lawful purpose. There is none that he procured it with the intention of using it in a difficulty which he intended to provoke, if

necessary to overcome his adversary in that difficulty, and that that purpose and intention he retained up to and through the combat. And yet the charge is framed as if there were facts proven on which the jury might so find, and hence hold him estopped to plead self-defense. This form of charge, declaring a defendant estopped to plead self-defense, is an exceedingly unwise one to be given. We have repeatedly condemned it, as shown by cases cited in the very able brief of counsel for appellant. It can never be proper, save in the few very rare cases where the case is such, on its facts, that a charge can be given embracing all the elements—not part of them, nor nearly all of them—essential to the estoppel. The old paths are the safe paths. The juries of the country can be safely trusted to find any defendant guilty whose case is really so bad as to estop him to plead self-defense, without resort—dangerous and unwise—to the metaphysical subtleties necessarily involved in the preparation of a proper charge of that sort.''

Then, in Tate v. State, 95 Miss. 138, 48 So. 13, the Court, in reversing a murder conviction because of a similar instruction, said:

''But the fatal vice in the instruction is that it effectually cuts off the right of self-defense. We have over and over again warned circuit judges against giving this sort of charge, and wherever it is given and a conviction results the judgment will always be reversed, except where this court can say, looking over the completed record, with confidence, that the defendant's guilt is so overwhelmingly manifest that no other verdict than that of guilt could probably be rendered. We cannot say this in this case, and this charge is, for that reason, reversible error.''

See, also, Adams v. State, 136 Miss. 298, 101 So. 437, and a discussion of this type of instruction in 2 Alexander, Miss. Jury Instructions, Sec. 4359 and Sec. 4365. We have examined Durham v. State, 158 Miss. 833, 131 So.

423, and Woodward v. State, 180 Miss. 571, 177 So. 531, 178 So. 469, relied on by the State, and conclude that they are not in conflict with our present holding.

The case at bar is closely analogous to Lofton v. State, supra, and we feel that the questioned instruction unduly limited the right to rely on self-defense, as was true in the Lofton case. The question of guilt or innocence, on the conflicting evidence in this record, was close, and the defense made by appellant should not have been restricted by this instruction.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Kyle* and *Arrington, JJ.,* concur.