# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
        Plaintiff, )
)
)
v. )    Cr. ID. No.  1305011774A
)
)
DARRELL COLEMAN, )
)
        Defendant. )

Submitted:  October 17, 2019
Decided: January 31, 2020

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S APPEAL SHOULD BE DENIED FROM THE RECOMMENDED DENIAL OF HIS MOTION FOR POSTCONVICTION RELIEF

Martin B. O'Connor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware, Attorney for Defendant Darrell Coleman.

PARKER, Commissioner

This 31st day of January 2020, upon consideration of Defendant's appeal from the recommended denial of his motion for postconviction relief, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

Following a Superior Court jury trial, Defendant Darrell Coleman was convicted of Murder First Degree and Possession of a Firearm During the Commission of a Felony ("PFDCF"). Coleman was sentenced to life imprisonment for the Murder First Degree conviction and three years at Level V for the PFDCF conviction.

Coleman's convictions and sentence were affirmed by the Delaware Supreme Court on direct appeal.[1]

Coleman filed a motion for postconviction relief. Counsel was appointed to represent Coleman with the motion. After briefing on the motion, an evidentiary hearing, and post-evidentiary hearing briefing, Judge Manning[2] issued a Report and Recommendation that Coleman's Rule 61 motion be denied.[3]

---

[1] *Coleman v. State*, 2016 WL 3387192 (Del. 2016).
[2] Sitting by designation as a Commissioner of the Superior Court pursuant to an Order of the Chief Justice dated October 26, 2018.
[3] *Coleman v. State*, 2019 WL 1780795 (Del.Super. 2019).

1

Coleman filed an appeal from the Report and Recommendation.[4] The State filed a response thereto.[5] Following briefing on the appeal, the appeal was referred to the undersigned Commissioner to assist in the resolution of the appeal.[6]

## FACTS PERTINENT TO THE APPEAL

The facts surrounding the May 12, 2013 incident at issue were detailed by the Delaware Supreme Court in its decision on Coleman's direct appeal.[7] Those facts were again set forth in the Report and Recommendation recommending the denial of Coleman's Rule 61 motion.[8] This Court refers to those decisions for the full recitation of the facts supporting the trial and conviction.

The facts dispositive of this appeal, as predominately set forth by the Delaware Supreme Court, are as follows:

As part of a planned visitation, six-year old J.R. spent May 12, 2013 with his father, Marvin Moore, at Moore's residence at Riverside in Wilmington. Moore was expected to return J.R. to his mother that evening. In the hours leading up to the time Moore was to do so, he and Coleman, who was then the boyfriend of J.R.'s mother, exchanged numerous phone calls. Finally, they arranged for Moore to drop J.R. off at a Wawa near Memorial Drive in New Castle.

---

[4] Superior Court Docket No. 131.
[5] Superior Court Docket No. 135.
[6] Superior Court Docket No. 137.
[7] *Coleman v. State*, 2016 WL 3387192, *1 (Del. 2016).
[8] *Coleman v. State*, 2019 WL 1780795, *1-2 (Del.Super. 2019).

Moore's two friends, Tierra Battles and Dearius Riley, took J.R. to the Wawa to meet up with Coleman. Moore did not accompany his two friends.

At the Wawa, Coleman and Battles began arguing. At one point Coleman said: "Tell Marvin next time Marvin say something crazy out of his mouth I be at his front door." Riley asked if Coleman wanted him to go get Moore, and Coleman replied: "No. If Marvin was a man, Marvin would have come down." Coleman then departed the Wawa with J.R. while Moore's friends returned to their vehicle and left.

When Moore's friends told Moore about the confrontation they had with Coleman at the Wawa, Moore responded: "I'm sorry, but I got to go take care of my business," and he was "going to go meet [Coleman] to fight." Moore's friends heard Moore and Coleman "snapping over the phone" in a "heated" conversation.

Riley testified that Marvin was in a heated conversation with Coleman arranging a meeting at the corner store in Riverside. Moore was saying to Coleman: "If you want to fight, we could fight; if you want to shoot, we could shoot. Whatever you want to do, we could do."[9] Moore was telling Coleman whatever you want, we'll fight, we'll shoot, we'll kill.[10] Moore and Coleman arranged to meet near Peralta's Market in Riverside, about a block and a half away from Moore's residence.

---

[9] October 21, 2014 Trial Transcript, at pg. 33.
[10] October 21, 2014 Trial Transcript, at pg. 33.

3

Coleman arrived first. He backed his vehicle down a one-way street and parked near Peralta's Market. Coleman then called Moore to tell him he was at the arranged meeting place and waiting for Moore. Indeed, Moore's friend Riley testified that he overheard Moore say on the phone: "You already at the corner store, so I'll be there in a little bit."

Moore walked out of his house to the sidewalk across the street from Peralta's Market. Coleman then got out of his vehicle ran across the street shot Moore and then ran back to his car and drove off.

When police arrived at the scene, they determined that Moore had one gunshot wound to his jaw and another one to his chest. Moore also had an unfired revolver between his thighs.

The Delaware Supreme Court, on Coleman's direct appeal, found that the evidence of Coleman's guilt was overwhelming.[11]

## COLEMAN'S APPEAL

In Coleman's Rule 61 motion, he raised two claims of ineffective assistance of counsel. Coleman contended that his justification defense of self-defense would have been bolstered had trial counsel challenged the firearm/toolmark evidence. Coleman contended that counsel was ineffective for not establishing during cross-examination that the gun in Moore's possession had attempted to be fired three

---

[11] *Coleman v. State*, 2016 WL 3387192, *2-3 (Del. 2016).

4

times, due to the presence of three firing pin impressions, although it was impossible to say when the gun had misfired.

There was no evidence that Moore attempted to or pulled the trigger on the gun in his possession on the day at issue, May 12, 2013, or that the gun had misfired on May 12, 2013. There was no evidence that Moore attempted to or pulled the trigger to shoot Coleman. The firing pin impressions could have been created at any time.

Coleman also contended that his self-defense claim would have been bolstered had Coleman testified at trial and that Coleman's decision not to testify was based on the fact that he had a 2004 drug conviction that may have been admissible. Coleman contends that counsel should have litigated the admissibility of the 2004 drug conviction before the decision was made as to whether Coleman should testify at trial.

The essence of Coleman's Rule 61 motion was that had the firing pin evidence been presented, and had Coleman testified, Coleman believes he had a reasonable probability of a different outcome based on the justification defense of self-defense.

Judge Manning found Coleman's claims to be lacking in merit and recommended the denial of Coleman's Rule 61 motion. Coleman has appealed the recommended denial of his Rule 61 motion.

For the reasons discussed below, Coleman's appeal of the recommended denial is denied. Even if Coleman presented testimony that Moore's gun had misfired three times at some unknown time, and even if Coleman had testified, there is no reasonable probability of a different outcome. To the extent there was any error by trial counsel, any such error was harmless beyond a reasonable doubt, in view of the overwhelming evidence supporting Coleman's conviction.

Under the facts of this case, Coleman could not satisfy the requirements of the justification defense of self-defense even under his own version of events. Coleman could not have succeeded with a self-defense claim and therefore counsel's decision not to emphasize that defense was not unreasonable or prejudicial in any way.

The justification defense of self-defense is not available if the defendant provoked the use of force or if deadly force could be avoided.[12] It has long been recognized that a person very plainly has no right to provoke a quarrel and then take advantage of it to justify the homicide arising from the quarrel which he himself provoked.[13]

One who kills another, to be justified or excused on the ground of self-defense, must have been without fault in provoking difficulty, and must not have

---

[12] 11 *Del. C.* § 464 (e)(1); October 27, 2014 Trial Transcript, at pg. 7; *Quillen v. State,* 110 A.2d 445, 452-453 (Del. 1955).

[13] *State v. Stevenson,* 188 A. 750, 751 (Del. Ct. Oyer and Terminer 1936); cited with approval, *Smith v. State,* 913 A.2d. 1197, 1212, ftnt. 10 (Del. 2006).

6

been the aggressor and must not have provoked, brought on, or encouraged the difficulty or produced the occasion which made it necessary for him to do the killing.[14]

Moreover, no looks, or gestures, however insulting, and no words, however offensive they may be, can amount in law to a provocation sufficient to justify an assault.[15]

The use of deadly force is also not justifiable if defendant knows that the necessity of using deadly force can be avoided with complete safety by retreating.[16] The person claiming self-defense must retreat if he can do so safely.[17] If defendant was in such a position that he could avoid danger by withdrawing or stepping back, it was his duty to do so.[18]

In trial counsel's Affidavit in response to Coleman's Rule 61 motion, counsel advised that he wrote a pre-trial letter to Coleman in response to Coleman's statement to him on October 10, 2014, that Coleman was planning on

---

[14] *Id.*

[15] *State v. Stevenson,* 188 A. 750, 751 (Del. Ct. Oyer and Terminer 1936); *State v. Roe,* 103 A. 16, 16 (Del.Ct. General Sessions 1918).

[16] 11 *Del. C.* § 464(e)(2); October 27, 2014 Trial Transcript, at pg. 77; See, *White v. State,* 2008 WL 4107980 (Del. 2008)(despite claim that defendant returned fire to protect himself, defendant was not entitled to justification jury instruction where defendant began firing at victim while the two men were on the street and the victim ran behind buildings and defendant followed victim behind the buildings.).

[17] *Spence v. State,* 129 A.3d 212, 225 (Del. 2015); *State v. Stevenson,* 188 A. 750, 751 (Del. Ct. Oyer and Terminer 1936).

[18] *State v. Roe,* 103 A. 16, 16-17 (Del.Ct. General Sessions 1918).

testifying at trial.[19] In that pre-trial letter, counsel advised that Coleman needed to consider some things when making the decision whether or not to testify.[20] Among those things to consider was how to deal with the following issues:

\* Were you having an argument with Marvin Moore that night? Why do people say that Marvin was talking to someone named Simba [Coleman's nickname] and was upset?[21]

\* If you were picking up the boy from Marvin that night why did you then go to Riverside instead of just taking him directly home to his mother?[22]

The responses to these questions are the death knell to any self-defense claim. As an aside, even if Coleman were to contend that his counsel never discussed these issues with him, Coleman, had he testified, would still be facing these questions from the State and the answers to these questions remain the death knell to any self-defense claim.

It is undisputed that Coleman was having an argument with Moore that night. Even under Coleman's version of events, it is undisputed that they were provoking each other to engage in a fight. Self-defense is not available to Coleman if he provoked the use of force, and the evidence in this case was that he had.

---

[19] Superior Court Docket No. 110- Affidavit of Trial Counsel in Response to Rule 61 Motion.
[20] Superior Court Docket No. 110- Affidavit of Trial Counsel in Response to Rule 61 Motion.
[21] Superior Court Docket No. 110- Affidavit of Trial Counsel in Response to Rule 61 Motion.
[22] Superior Court Docket No. 110- Affidavit of Trial Counsel in Response to Rule 61 Motion.

Moreover, Coleman could have simply taken J.R. to his mother's instead of going to Riverside to fight Moore. Coleman had the ability to safely retreat, to go home instead of going to Riverside to fight, and chose not to do so. The use of deadly force is not justifiable if defendant knows that the necessity of using deadly force can be avoided with complete safety by retreating. Here, there was nothing stopping Coleman from safely retreating, from leaving the Wawa with the boy in tow, and going home.

Instead, Coleman challenged Moore to a confrontation, or accepted Moore's challenge to a confrontation. Coleman made the decision to go to the designated meeting place to fight Moore after picking up J.R. at the Wawa. Instead of retreating and going home, Coleman made the decision to go to the meeting place where he laid in wait for Moore to arrive to engage in combat with gun in hand to settle a dispute between them.

Coleman had multiple opportunities to safely retreat. He could have left the Wawa and gone home instead of to Riverside to fight Moore. He could have left the agreed upon meeting place at Riverside before Moore arrived. He could have driven away from the meeting place as Moore was approaching rather than electing to get out of his vehicle, walk over to Moore, and shoot him.

He who by his own conduct compels another to get ready for self-defense cannot claim that the responsive preparation has put his own life in danger and

9

thereby justified him in stopping the preparation by slaying him who was making ready for a combat into which he had been forced.[23]

Most relevant and totally undermining Coleman's contention that there was an issue of self-defense that was not fully pursued, is the fact that the undisputed evidence is that Coleman not only laid in wait for Moore to arrive, but he left his own vehicle and was observed "running over to where Moore's body was later found, and running back to his car before fleeing."[24] At the time of the shooting, Coleman, who did not retreat in any way, was the aggressor in pursuing Moore while armed and shooting him twice.

The undisputed testimony was that Coleman and Moore were arguing all day. They mutually agreed to a time and a place to settle their personal quarrel. They both had the mutual intent and willingness to fight due to their pre-existing dispute or ill will towards each other. The two arrived at the designated place and time to kill or be killed. Where two persons mutually engage in combat knowing that it will probably result in death or serious bodily injury to one or the other, and one kills the other, the defendant cannot claim that he acted in self-defense in taking the life of the deceased. Such killing is murder.

---

[23] See, *Thomas v. State,* 61 Miss. 60, 66-67, 1883 WL 3956, *5 (Miss.Sup.Ct. 1883).
[24] *Coleman v. State,* 2016 WL 3387192, *3 (Del. 2016).

In this case, Coleman voluntarily agreed to meet Moore and engage in mutual combat where deadly weapons were used, and death resulted. Coleman is guilty of murder irrespective of whether Moore had the opportunity to draw his weapon. There is no reasonable probability that Coleman could have succeeded with a self-defense claim even if counsel had established that Moore's gun had misfired three times in the past, and even if Coleman had testified. Counsel's decision not to emphasize that defense was not unreasonable or prejudicial in any way.

## CONCLUSION

Coleman's appeal from the Recommended Denial of his Rule 61 motion for postconviction relief should be DENIED.

**IT IS SO RECOMMENDED.**

_____
Commissioner Lynne M. Parker

cc:     Prothonotary
        Timothy J. Weiler, Esquire

11